UNITED STATES POSTAL
SERVICE, Plaintiff,

v.

NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL–CIO,
Defendant.

Civ. A. No. 85–2206.

United States District Court,
District of Columbia.

April 4, 1986.

Lori Joan Dym, Office of Labor Law, U.S. Postal Service, Washington, D.C., for plaintiff.

Shaliah Stewart, New York City, for defendant.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

This labor case is before the Court on the parties' cross-motions for summary judgment.[1] Plaintiff United States Postal Ser-

---

**1.** Jurisdiction is conferred by 39 U.S.C. §§ 409(a), 1208(b) and (d), and 9 U.S.C. § 10.

vice ("Postal Service") seeks to vacate an arbitrator's decision ordering the reinstatement of a letter carrier convicted of unlawfully delaying the mail on the ground that such an award is contrary to public policy. Defendant National Association of Letter Carriers, AFL–CIO ("Union"), urges that another public policy—judicial deference to arbitral determinations—mandates affirmance of the order. The material facts are not in dispute and, for the reasons set forth below, the Court will grant plaintiff's motion for summary judgment and deny that of defendant.

On June 13, 1984, police and postal inspectors made a lawful search of the impounded personal automobile of letter carrier Edward Hyde. They found over 3,500 undelivered pieces of mail addressed to residents on Hyde's delivery route in Garden City, New York, and a lesser amount destined for addresses elsewhere. Most of the mail was first-class, some containing commercial and U.S. Treasury checks. Postmarks indicated certain items had been more than a year delayed.

Hyde was immediately arrested and charged with unauthorized possession and unlawful delay of the mail. After Hyde pled guilty to the latter offense,[2] the court sentenced him to 18 months' probation, the principal condition of which being that he enroll in and successfully complete a rehabilitation program for compulsive gamblers. Hyde has sworn under oath that he regularly attends Gamblers Anonymous meetings and abstains altogether from gambling.

Shortly after Hyde's arrest, the Postal Service notified Hyde of its intention to discharge him, effective August 20, 1984. During the notice period, the Union filed a grievance on Hyde's behalf pursuant to the collective bargaining agreement, maintaining that there was not "just cause" for the firing. Unable to settle the grievance, the Union sought arbitration, and on April 12, 1985, the arbitrator ordered that Hyde be given a medical leave of absence of 60 days and then reinstated without back pay. Ac-

knowledging his inability "to foretell what the future prospects of the Grievant's rehabilitation may yield," the arbitrator nevertheless concluded that, "if any reasonable hope exists for the rehabilitation of the Grievant[, it is in] returning ... him to the work place, [and] no one should deny him this opportunity." The Postal Service, however, has refused to comply and has instead filed the instant complaint to vacate the arbitration award.

The only issue before the Court is whether the award violates public policy and, therefore, exceeds the scope of the arbitrator's authority. It is, of course, a most basic principle of labor law that the strong federal policy favoring arbitration of labor disputes results in "extremely limited" judicial review of arbitrators' awards. *Devine v. White*, 697 F.2d 421, 436 (D.C.Cir. 1983) (citing *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). The parties having bargained for an arbitrator's interpretation of the collective bargaining agreement, courts are bound to enforce the awards "[u]nless the arbitral decision does not 'dra[w]' its essence from the collective bargaining agreement....'" *W.R. Grace and Co. v. Local 759, International Union of Rubber Workers*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361).

Qualifying this general rule of judicial deference, however, is an exception which operates when an arbitrator's decision contravenes the law or some other public policy of comparable stature. The court of appeals for this circuit has stated that, while "an arbitral decision ... must present egregious deviations from the norm before we will abandon the firmly-established principle of deference[,] courts will not enforce an award that is contrary to law or explicit public policy." *Office and Professional Employees International Union, Local 2 v. WMATA*, 724 F.2d 133, 137, 140 (D.C.Cir.1983). *See also Re-*

---

**2.** 18 U.S.C. § 1703(b).

*vere Copper and Brass Inc. v. Overseas Private Investment Corp.*, 628 F.2d 81, 83 (D.C.Cir.), *cert. denied* 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980). To override the rule of deference, however, the competing public policy " 'must be well-defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.' " *Id.* at 140 (citing *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2783).

The First Circuit has held just such a public policy to apply in circumstances sufficiently similar to govern in this case. *See United States Postal Service v. American Postal Workers Union,* 736 F.2d 822 (1st Cir.1984). Holding an arbitration award requiring the Postal Service to reinstate a window clerk convicted of embezzling postal funds to be unenforceable, the court declared that the public policy involved was "not only defined by positive law, but ... also the clear dictates of common sense[:]"

A postal employee is required to swear that he "will well and faithfully discharge the duties of the office on which [he is] about to enter." 39 U.S.C. § 1011. Numerous statutes relate to the conduct and honesty of postal employees—among them is 18 U.S.C. § 500, the statute under which [the clerk] was convicted. Moreover, the Postal Service is required by law to be "prompt, reliable, and efficient...." 39 U.S.C. § 101(a). Finally, as a government monopoly, the public has to use the Postal Service for the carriage of regular letter mail.

Aside from any considerations bearing directly on [the clerk], we cannot avoid the common sense implications that requiring the rehiring of [the clerk] would have on other postal employees and on the public in general. Other postal employees may feel there is less reason for them to be honest than they believed— the Union could always fix it if they were caught. Moreover, the public trust in

the Postal Service, and in the entire federal government, could be diminished by the idea that graft is condoned.

*Id.* at 825.[3]

The Union contends that the First Circuit case is distinguishable because the window clerk, unlike Hyde, committed a crime of which an essential element is an intent to defraud. The Union submits that ridding the Postal Service of dishonest employees may be an imperative act of self-preservation; Hyde, however, "only delayed" the mails. The arbitrator found that Hyde's conduct was neither purposive nor undertaken for self-enrichment, and in addition to his compulsion to gamble, he was "emotionally sick" from other personal problems which he appeared to be making appropriate efforts to overcome.

As had the window clerk, however, Hyde also violated a public trust by failing to perform his own primary duty, viz., properly delivering the mail entrusted to him, and his conduct does no less mischief to the operation of the postal system simply because it originates in deficits of character arguably more forgiveable than cupidity. The inexorability of the mails, upon which literally millions depend daily, is equally compromised whether postal workers are derelict in their duties for reasons of avarice, indolence, or distractive vices such as gambling. The public policy which must prevail in such cases, when a choice must be made, is that which gives best assurance of an efficient and reliable postal service, and that policy is *not* one of deference to arbitral autonomy in individual grievance cases, no matter how conscientiously the arbitrator may have sought to match the penalty to the culpability of the offender. The Postal Service must retain the ability to remove postal employees it does not fully trust from positions vulnerable to breaches of trust; the mails are simply too important to the country to make them

**3.** The court did warn that "[t]his opinion is not to be taken as authority for the proposition that there is a public policy against the Postal Ser-

vice employing anyone who has been convicted of a crime." 736 F.2d at 825.

dependent upon the vicissitudes of rehabilitation of a single letter carrier.[4]

This Court does not lightly discard the compassionate conclusions of the arbitrator. It is well aware of other courts' admonitions that "[p]ublic policy should not be turned into 'a facile method of substituting judicial for arbitral judgment[,]' " *Amalgamated Transit Union v. Aztec Bus Lines,* 654 F.2d 642, 644 (9th Cir.1981) (citation omitted), and that "[a] court should exercise extreme caution before declaring that an arbitral award violates public policy." *Amalgamated Meat Cutters and Butcher Workmen v. Great Western Food Co.,* 712 F.2d 122, 124 (5th Cir.1983). Nevertheless, as it obviously was in the latter case in which an appeals court reversed the district court's enforcement of an arbitration award directing an employer to reinstate a truck driver whose on-the-job drinking caused an accident, it must also be remembered that an arbitrator "does not sit to dispense his own brand of industrial justice," *Enterprise Wheel* 363 U.S. at 597, 80 S.Ct. at 1361, and his decision is not inviolate merely because the law of labor relations favors arbitration.

For the foregoing reasons, therefore, it is, this 4th day of April, 1986,

ORDERED, that defendant's motion for summary judgment is denied; and it is

FURTHER ORDERED, that plaintiff's motion for summary judgment is granted, and the arbitrator's decision of April 12, 1985, ordering the reinstatement of Edward Hyde as a letter carrier with the United States Postal Service is vacated.

---

4. This case casts the shadow of, but does not present, the larger question of whether the Postal Service may ever, by a collective bargaining agreement, allow such an issue to fall to an arbitrator by way of the grievance process. Decisions as to who will be permitted to carry the mail so directly affect the integrity of the mail delivery system, a public function essential to the nation's general well-being, that public policy may very well find them to be altogether non-delegable.