**UNITED STATES POSTAL SERVICE**

v.

**NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL–CIO, Appellant.**

**No. 86–5296.**

United States Court of Appeals, District of Columbia Circuit.

Feb. 13, 1987.

Keith E. Secular, New York City, and Sally M. Tedrow, Washington, D.C., were on the brief, for appellant.

Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and A. Patricia Frohman, Asst. U.S. Attys., Stephen E. Alpern, Associate General Counsel and Lori Joan Dym, Atty., U.S. Postal Service, Washington, D.C., were on the brief, for appellee.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court PER CURIAM.

PER CURIAM:

In this case, we review a decision by the District Court, *see United States Postal Serv. v. National Ass'n of Letter Carriers,* 631 F.Supp. 599 (D.D.C.1986), vacating an arbitrator's award on the ground that the award violated public policy. The District Court's opinion was issued fourteen days prior to our decision in *American Postal Workers Union v. United States Postal Service,* 789 F.2d 1 (D.C.Cir.1986) ("*Postal Workers*"), and before our most recent pronouncement on the "public policy exception" in *Northwest Airlines v. Air Line Pilots Association,* 808 F.2d 76 (D.C.Cir. 1987). Because the District Court's decision is inconsistent with the holdings in these two cases, we reverse.

## I. BACKGROUND

The United States Postal Service (the "Postal Service") and the National Association of Letter Carriers, AFL–CIO (the "Union") are parties to a collective bargaining agreement. Article 16 Section 1 of that agreement provides that no employee may be disciplined or discharged except for "just cause."[1] Any disciplinary action taken by the Postal Service may be challenged in accordance with the agreement's grievance-arbitration procedures. The agreement further provides that discipline should be "corrective" in nature rather than "punitive."[2]

Edward Hyde, a letter carrier employed by the Postal Service, was discharged from his employment shortly after being arrested and charged with unlawful delay of the mail. Hyde subsequently pled guilty and was sentenced to eighteen months probation, the principal condition being that he enroll in and successfully complete a rehabilitation program for compulsive gambling.

The Union, pursuant to the parties' agreement, filed a grievance challenging Hyde's dismissal. When the parties were unable to settle the grievance, the Union submitted the matter to arbitration. The specific issue posed for the arbitrator was whether Hyde's discharge had been for "just cause" under the parties' collective bargaining agreement. After considering this issue, the arbitrator ordered that Hyde be reinstated without back pay upon fulfilling certain conditions.[3] Although Hyde satisfied the conditions established by the arbitrator, the Postal Service refused to reinstate him. Instead, it filed an action in the District Court seeking to vacate the arbitrator's award on the sole ground that the award violated public policy.

---

1. *See* Agreement, *reprinted in* Joint Appendix ("J.A.") at 45.

2. *Id.*

3. Specifically, Hyde was to be reinstated upon demonstrating, after a 60–day medical leave, that he had attended Gamblers Anonymous meetings regularly, had fully cooperated with its members, had not participated in any gambling and was physically able to return to work. *See* J.A. at 26.

Relying principally on the First Circuit's decision in *United States Postal Service v. American Postal Workers Union,* 736 F.2d 822 (1st Cir.1984) (vacating an arbitrator's award that reinstated a window clerk convicted of embezzling postal funds), the District Court vacated the arbitrator's award. Although the trial court acknowledged the strong federal policy of deference to arbitral awards, it concluded that this policy had to give way to one "which gives best assurance of an efficient and reliable postal service." 631 F.Supp. at 601. The Union filed this appeal from the District Court's judgment.

## II. ANALYSIS

As noted earlier, the District Court's decision was rendered without the benefit of our two recent pronouncements in *Postal Workers* and *Northwest Airlines.* It is clear, however, that *Postal Workers* and *Northwest Airlines* compel reversal of the District Court's judgment.

As we stated most recently in *Northwest Airlines,* 808 F.2d at 78, "a labor arbitration award must be enforced if the arbitrator acts within the confines of his jurisdiction and his award draws its essence from the parties' collective bargaining agreement; this is so even when a reviewing court disagrees with the arbitrator's judgment on the merits." In the instant case, the Postal Service does not (indeed, cannot) maintain that the arbitrator acted outside the bounds of the parties' collective bargaining agreement. Rather, the facts make clear that the arbitrator performed the very role contemplated by the parties to that agreement; he interpreted the contract in order to decide whether Hyde had been discharged for "just cause." The arbitrator's judgment on this issue was precisely what the parties had bargained for.

This court has recognized that an arbitration award may be set aside as violative of public policy in certain "limited circumstances." *Northwest Airlines,* at 78. We made abundantly clear in *Postal Workers* (and again in *Northwest Airlines* ), however, that the "public policy exception" is extremely narrow:

[I]t is well-understood that courts will not enforce an arbitration award if the award itself violates established law or seeks to compel some unlawful action. However, this rule, which is sometimes referred to as a public policy exception, is *extremely narrow.* In *W.R. Grace,* [461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) ] the Supreme Court has explained that, in order to provide the basis for an exception, the public policy in question "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " Obviously, the exception is designed to be narrow so as to limit potentially intrusive judicial review of arbitration awards under the guise of "public policy."

... [I]t is plain from the language in *W.R. Grace* itself that the Court meant to say only that an arbitration award may not be enforced if it transgresses "well defined" and "dominant" "laws and legal precedents." It is also clear from the opinion in *W.R. Grace* that judges have no license to impose their own brand of justice in determining applicable public policy; thus, the exception applies only when the public policy emanates from clear statutory or case law, *"not from general considerations of supposed public interests."*

There is surely no doubt that the instant case does not pose a situation requiring the invocation of a public policy exception. The arbitrator's award was not itself unlawful, for there is no legal proscription against the reinstatement of a person such as the grievant. And the award did not otherwise have the effect of mandating any illegal conduct.

*Postal Workers,* 789 F.2d at 8 (emphasis in original) (footnotes omitted).

In this case, there is again no basis for invoking the "extremely narrow" public policy exception. The Postal Service cannot identify any "legal proscription against the reinstatement of a person such as [Hyde]." Rather, the Postal Service would have this court "impose [its] own brand of justice" by holding that the reinstatement

of Hyde is inconsistent with the public's interest in an efficient and reliable postal service. We declined a similar invitation in *Postal Workers* and *Northwest Airlines,* and we decline the invitation once again.[4]

### III. Conclusion

For the reasons set forth above, the judgment of the District Court is reversed. The case is remanded to the trial court with instructions to enter judgment for the appellant.

*So ordered.*

---

**4.** We recognize that our holding may differ from the position taken by the First Circuit in *United States Postal Service v. American Postal Workers Union,* 736 F.2d 822 (1st Cir.1984). However, we observed in *Postal Workers,* 789 F.2d at 9, that it was "difficult to square either the rationale or the result" in the First Circuit case with the Supreme Court's decision in *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *see also United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In the instant case, we must once again reject the First Circuit's approach to the extent that it is inconsistent with Supreme Court precedent.