**COMMUNICATION WORKERS OF AMERICA, AFL—CIO, Plaintiff,**

v.

**BELL ATLANTIC—WEST VIRGINIA, INC., Defendant.**

**No. Civ.A. 97–1628(HHK).**

United States District Court, District of Columbia.

Nov. 25, 1998.

Kimberly A. Neeb, Philadelphia, PA, for Plaintiff.

Keith Fischler, Arlington, VA, for Defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

This case concerns the termination of a male employee following an incident at a Bell Atlantic office in West Virginia. The incident also involved a female employee, who was reprimanded but not terminated. The Communication Workers of America ("the union") challenged the termination of the male employee. The collective bargaining agreement between Bell Atlantic and the union requires that such grievances be submitted for binding arbitration. The arbitrator rendered an opinion and award finding that Bell Atlantic did not have just cause for the termination and directing Bell Atlantic to reinstate the male employee. Bell Atlantic, however, has refused to do so. The union has brought this action to enforce the arbitrator's award. Bell Atlantic has counterclaimed for a declaration that the award is "improper, as it violates public policy."

Presently before the court are the cross-motions of the parties for summary judgment. After consideration of the motions, the responses thereto, and the entire record of the case, the court concludes that the union is entitled to summary judgment.

## I. BACKGROUND

On September 24, 1994, the defendant Bell Atlantic Network Services, Inc. ("Bell Atlantic") terminated the employment of Michael Woody for violating the company's policy prohibiting sexually harassing conduct in the workplace. Arbitration Opinion and Award at 3. Pursuant to a January 25, 1996, collective bargaining agreement between Bell Atlantic and the union, see Grievances and Grievance Meeting Procedure, Complaint App. A, the union filed a grievance on Woody's behalf and processed it through all three steps of the grievance procedure without resolution. When the parties failed to resolve the matter, it was presented to an arbitrator, who decided in favor of Woody and directed that Bell Atlantic reinstate him. Bell Atlantic has refused to do so. The union now seeks an injunction from this court directing Bell Atlantic to comply with the arbitration award.

The arbitrator made numerous factual findings regarding the incident itself as well as the conduct of the principals both beforehand and afterward. To summarize: Michael Woody and Odarise Tyree were both longtime employees at a Bell Atlantic Office in Charleston, West Virginia. In the early evening of August 31, 1994, Woody asked Tyree to assist him with a new computer system. According to Woody, while assisting him Tyree deliberately rested her breasts on his shoulder and, upon departing, called out, "Look at this" and pulled down her top and bra revealing a generous portion of her breast. Tyree denies this account.

Some three quarters of an hour later, Woody went to Tyree's desk. According to Tyree, he called out "Look at this" while standing beside her, and was holding his penis in his hand. Woody denies this account, and asserts that he only made a zipping sound to make Tyree think he was retaliating for her earlier exhibition to him.

The arbitrator concluded that Woody did reveal his private anatomy to Tyree on the evening of August 31, but went on to examine facts indicating "the extent to which Ms. Tyree may have encouraged his advances and whether or not this mitigates Mr. Woody's culpability." Arbitration Order and Award at 19. For at least a year before the incident, for example, Tyree admitted that Woody had been fondling her breasts with his hand inside her dress and under her bra on a regular basis, in a "friendly" manner. See id. at 20–21. At the time of the incident, she "did not call for help" and "did not appear taken aback," id. at 22, but instead offered him oral sex. Id. at 23. After the incident, Tyree wrote Woody a letter demanding a "financial arrangement" or else she would "file a sexual harassment charge against you with a lawyer." Id. at 7. Tyree reported the incident to management only after "several weeks" had passed. Id. at 22. Given these facts, the arbitrator stated that he could not conclude that Tyree had given Woody any reason to believe that showing Tyree his own private parts would be a shocking or unwelcome event. Id. Accordingly, the arbitrator did not find just cause for dismissal on the grounds of sexual harassment. Id.

Despite reaching this conclusion, the arbitrator proceeded to describe the conduct of both Woody and Tyree as "repugnant and distasteful by any standard of office decorum or social mores." The arbitrator stated that he would have sustained a decision to terminate both Woody and Tyree, but could not find just cause to sustain the "disparate treatment" in terminating Woody only.

## II. STANDARD OF REVIEW

### A. Summary Judgment Standard

A motion for summary judgment should be granted if and only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322 n. 3., 106 S.Ct. at 2552 n. 3. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### B. Review of the Arbitrator's Decision

A court's review of an arbitration award under a collective bargaining agreement is "extremely narrow." *American Postal Workers Union v. U.S. Postal Service,* 52 F.3d 359, 361 (D.C.Cir.1995). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers v. Misco,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987).

In this circuit, "the question of interpretation of the collective bargaining agreement is a question for the arbitrator." *Cole v. Burns Int'l Security Serv.,* 105 F.3d 1465, 1474 (D.C.Cir.1997). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* The function of the court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Consequently, "an award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law unless it 'compels the violation of law or conduct contrary to accepted public policy.'" *American Postal Workers Union v. United States Postal Serv.,* 789 F.2d 1, 7 (D.C.Cir.1986) (footnote omitted). Still:

> [A]n arbitrator is confined .to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

*Cole,* 105 F.3d at 1474 (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

To summarize, this circuit views an arbitration award as the presumptively valid product of collective bargaining. Before the court can set aside this bargain, it must find that the arbitrator's decision either compels the violation of law or accepted public policy or dispenses the arbitrator's "own brand of industrial justice" rather than "draw[ing] its essence from the collective bargaining agreement." *Id.*

### III. DISCUSSION

In its counterclaim, Bell Atlantic has alleged that the award "does not draw its essence from the contract language" and "violates public policy." Counterclaim ¶¶ 18–19. These contentions will be considered in order.

### A. The Essence of the Collective Bargaining Agreement

The requirement that an arbitral award draw its essence from the collective bargaining agreement is a deferential standard that warrants vacatur of the award only in "the narrowest circumstances." *Madison Hotel v. Hotel and Restaurant Employees,*

*Local 25, AFL—CIO,* 144 F.3d 855, 858–59 (D.C.Cir.1998). "[I]f an arbitrator was 'arguably construing or applying the contract,' a court must defer to the arbitrator's judgment." *Id.* at 858 (quoting *Misco,* 484 U.S. at 38).

■ The collective bargaining agreement giving rise to this action is the "General Agreement Between Communication Workers of America, AFL—CIO and Bell Atlantic–Washington, D.C., Inc., Bell Atlantic–Maryland, Inc., Bell Atlantic–Virginia, Inc., Bell Atlantic–West Virginia, Inc., Bell Atlantic Network Services, Inc." (the "Agreement"). The Agreement provides for arbitration of any grievance involving "the dismissal (for just cause) of an employee who at the time of dismissal had six (6) or more months of completed net credited services." Agreement § 12(A)(4). The issue for arbitration was whether the dismissal of Woody was for just cause. The arbitrator correctly identified this issue. Arbitration Order and Award at 2.

In construing the meaning of "just cause" within the Agreement, the arbitrator referred to Bell Atlantic's internal policy on a harassment-free environment,[1] *id.* at 3. The Agreement, however, does not expressly incorporate or adopt Bell Atlantic's sexual harassment policy, but instead includes a general provision prohibiting discrimination on the grounds of race, color, religion, sex, age, disability, or national origin. Counterclaim ¶ 7. It was therefore reasonable for the arbitrator to supplement Bell Atlantic's interpretation of sexual harassment as a form of sex discrimination with the external law on sexual harassment. Accordingly, the arbitrator reviewed the various sexual harassment cases cited by the parties, and determined that "the gravamen of a sexual harassment claim is whether or not the sexual advances

or sexual conduct complained of were unwelcome." *Id.* at 19. Applying this inquiry to the facts, the arbitrator found no basis for concluding that Woody's advances were unwelcome. *Id.* at 22. Here, where construction of the Agreement implicitly required the arbitrator to apply external law, the court will defer to the arbitrator's interpretation of that law. *American Postal Workers Union v. United States Postal Service,* 789 F.2d 1, 6 (D.C.Cir.1986).

In further support of his conclusion, the arbitrator considered whether Tyree and Woody had been subjected to disparate treatment for offensive conduct that was similar in nature. Arbitration Order and Award at 23. Such an inquiry was entirely appropriate, given that a finding of disparate treatment may serve as the sole basis for an arbitrator's conclusion that just cause is lacking. See, e.g., *Osram Sylvania v. Teamsters Local Union 528,* 87 F.3d 1261, 1264 (11th Cir.1996); *Waverly Mineral Products Co. v. United Steelworkers,* 633 F.2d 682, 684–85 (5th Cir.1980); *Communications Workers of America v. American Telephone & Telegraph Co.,* 903 F.Supp. 3, 5–6 (D.D.C.1995). Noting that Woody had been dismissed while Tyree went "virtually unscathed" for "equally serious misconduct," the arbitrator concluded that Woody had been subjected to disparate treatment. Arbitration Order and Award at 23. The court defers to the arbitrator's findings that Tyree and Woody had engaged in equally serious misconduct and had been treated disparately. See *Misco,* 484 U.S. at 38 ("To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.").

---

1. The policy states:
   Sexual harassment is also specifically prohibited and will not be tolerated. Further, no employee shall threaten or insinuate, either explicitly or implicitly, that another employee's submission to or rejection of sexual advances will in any way influence any personnel decision regarding that individual's employment, evaluation, wages, advancement, assigned duties, shifts, or any other condition of employment or career development.

   Other sexually harassing conduct in the workplace committed by management or non-management personnel, whether physical or verbal, is also prohibited. This includes offensive flirtations, advances, requests for sexual favors, propositions; commentaries about an individual's body; sexually degrading words used to describe an individual; and the display in the workplace of sexually suggestive objects or pictures.
   Arbitrator's Opinion and Award at 3.

The arbitrator's conclusion that there was no just cause for dismissal followed directly from his application of the Agreement to the facts of this case. In construing the meaning of "just cause" within that Agreement, the arbitrator reasonably relied upon relevant sources: sexual harassment case law and an inquiry into disparate treatment. The court therefore has no hesitation in finding that the arbitral award drew its essence from the Agreement. See *Misco*, 484 U.S. at 38–39 (holding that where the arbitrator is arguably construing the contract within the scope of his authority, even serious error does not suffice to overturn his decision).

### B. Public Policy

■ To set aside an arbitral award on public policy grounds, a court must find that the public policy is "well-defined and dominant." *Misco*, 484 U.S. at 43. If a court does find that a well-defined and dominant public policy is implicated, it must then determine whether it has been "clearly shown" that enforcement of the award would in fact violate that public policy. *Id.* at 43; see also *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 770, 103 S.Ct. 2177, 2185–86, 76 L.Ed.2d 298 (1983).

Sexual harassment is specifically prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and the West Virginia Human Rights Act, § 5–11–9. The Supreme Court's holding in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment," has led the courts in other circuits to conclude that the public policy against workplace sexual harassment is "well-defined and dominant." See, e.g., *Chrysler Motors Corp. v. International Union, Allied Industrial Workers of America, AFL—CIO*, 959 F.2d 685, 687–88 (7th Cir.), cert. denied, 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992); Stroehmann Bakeries v. Local 776, International Brotherhood of Teamsters, 969 F.2d 1436, 1441–42 (3rd Cir.1992), cert. denied, 506 U.S. 1022, 113 S.Ct. 660, 121 L.Ed.2d 585 (1992); *Newsday v. Long Island Typographical Union*, 915 F.2d 840, 845 (2nd Cir.1990).

■ Regardless of how the public policy against sexual harassment is characterized, however, the court must defer to the arbitrator's finding that Woody's actions did not rise to the level of sexual harassment. See *American Postal Workers Union*, 789 F.2d at 6. Accordingly, the court finds that enforcing the arbitral award in this case would not violate the public policy against sexual harassment. See *United States Postal Serv. v. National Ass'n of Letter Carriers*, 810 F.2d 1239, 1241 (D.C.Cir.1987) (upholding award reinstating employee where "there is no legal proscription against the reinstatement ... [a]nd the award did not otherwise have the effect of mandating any illegal conduct").

The substance of Bell Atlantic's counterclaim is that the company must now face the risk of litigation from all of its employees, including Tyree and Woody, for any sexual harassment that occurs in its workplace in violation of Title VII. See Def.'s Mot. for Summ. J. at 18–19. That litigation risk, however, existed long before Bell Atlantic voluntarily entered into its collective bargaining agreement with the union. That 1996 agreement established rights and obligations concerning the "just cause" required to support the dismissal of a six-month employee, without any specific reference to the company's rights and obligations regarding the prevention of sexual harassment in the workplace. If the "just cause" standard as embodied in the agreement fails to shield Bell Atlantic to its satisfaction from its future liabilities under Title VII, it is a dilemma of the company's own making. Far from "minimiz[ing] the significance of sexual harassment," Def.'s Mot. Summ. J. at 13, the arbitral award highlights the potential conflict between an employer's industrial due process and Title VII obligations, and thereby emphasizes the importance of sexual harassment as an issue to be carefully addressed in collective bargaining.

### IV. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment must be denied and the plaintiff's motion for summary

judgment must be granted. An appropriate order accompanies this memorandum.

## ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 25th day of November 1998 hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of the plaintiffs; and it is further

**ORDERED and ADJUDGED** that the complaint in this case is dismissed.