# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 8, 2016         Decided April 28, 2017

No. 16-7004

NATIONAL RAILROAD PASSENGER CORPORATION,
APPELLEE

v.

FRATERNAL ORDER OF POLICE, LODGE 189 LABOR
COMMITTEE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00678)

*Thomas A. Cushane* argued the cause and filed the briefs for appellant. *David P. Hiester* entered an appearance.

*Thomas E. Reinert Jr.* argued the cause for appellee. With him on the brief was *Matthew J. Sharbaugh*.

Before: KAVANAUGH and PILLARD, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Dissenting Opinion filed by *Circuit Judge* PILLARD.

RANDOLPH, *Senior Circuit Judge*: This is an appeal from the judgment of the district court vacating an arbitrator's award. The arbitrator ruled that the National Railroad Passenger Corporation – "Amtrak" – must reinstate, with backpay and lost seniority, an employee Amtrak fired for misconduct.  A union – the Fraternal Order of Police, Lodge 189 – brought the arbitration on the employee's behalf.   The issue is whether "procedural limitations on the conduct of internal investigations contained in a collective bargaining agreement between Amtrak and the FOP" bind the Amtrak Office of Inspector General. *Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189*, 142 F. Supp. 3d 82, 83 (D.D.C. 2015).

Amtrak has its own police force.[1]   A provision in the Amtrak-FOP June 2010 collective bargaining agreement is entitled "Police Officers Bill of Rights."  The preamble to this provision – Rule 50 of the agreement – states that the "Police Department has established the following procedures to govern the conduct and control of interrogations."   Among the procedures are these: the investigator must inform the employee of his right to delay questioning in order to have a union representative present; if the employee is suspected of criminal activity, the investigator must give *Miranda*[2] warnings; and the investigator must record the interview "mechanically or by a

---

[1] Amtrak is a District of Columbia corporation created by Congress.  *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 383-86 (1995).

[2] That is, the interviewer must inform the individual "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

stenographer." The fired employee, Sarah Bryant, was an officer in the Canine Unit of the Amtrak Police Department. In 2011, Amtrak's Office of Inspector General received an anonymous tip that Officer Bryant jointly owned a home in Maryland with her supervisor, Inspector William Parker, and that Parker had been giving Bryant a disproportionate number of assignments commanding a higher rate of pay. The Amtrak Police Department's Internal Affairs Unit received the same tip and opened an investigation. Amtrak police interviewed Bryant twice. Both times the police complied with Rule 50. In those two interviews, Bryant maintained that she was only Parker's tenant. The Police Department closed its investigation in June 2012 without recommending any sanctions.

In September of the same year, an Inspector General investigator interviewed Bryant. The investigator did not record the interview or inform Bryant of her right to have a union representative present. The investigator gave Bryant some warnings,[3] but did not inform her that she had a right to counsel or that counsel would be appointed if she could not afford an attorney.

The Inspector General's report concluded that Bryant had lied about being Parker's tenant during her earlier interview with Amtrak's Police Department. The deed on the house where she resided listed her as a co-owner and the loan documents listed her as a co-borrower on the property's second mortgage. The Inspector General also found that Bryant had falsified an affidavit claiming a tax exemption for first-time home buyers.

---

[3] Bryant signed a statement certifying she understood that she had the right to remain silent; that anything she said could be used against her in a criminal or disciplinary proceeding; and that Amtrak could not terminate her for remaining silent, but could use her silence in a disciplinary proceeding.

After receiving the Inspector General's report, the Amtrak Police Department suspended Bryant, pending a disciplinary conference. At the conference, Bryant refused to resign. The Police Department terminated her on December 3, 2012.

After Bryant unsuccessfully appealed the decision within Amtrak, she sought arbitration pursuant to the collective bargaining agreement's grievance procedure. On her behalf, the FOP claimed that she had been fired without just cause. Without reaching that claim, the arbitrator determined that Bryant should be reinstated because the Inspector General's investigator, when interviewing her, had not fully complied with the contract's Rule 50 procedures. Although this provision of the collective bargaining agreement does not mention the Amtrak Office of the Inspector General, and although the Amtrak Inspector General did not participate in the Amtrak-FOP contract negotiations and did not sign the agreement, the arbitrator concluded that Rule 50 bound the Inspector General. Rule 50, the arbitrator wrote, applies to "all bargaining unit member interrogations" and "does not exempt" the Inspector General.[4]

Pursuant to the Railway Labor Act, Amtrak brought an action in district court, seeking an order setting aside the arbitrator's award. *See* Railway Labor Act, 45 U.S.C. § 153 First (q). The district court, relying on the Inspector General Act of 1978, 5 U.S.C. app. 3, §§ 1-13, and *U.S. Department of*

---

[4] The dissent seems to think that the arbitrator did not order Bryant reinstated because the Inspector General violated Rule 50. *Dissent* at 5. That is not correct. The arbitrator decided that the Inspector General "must comply with" Rule 50. The arbitrator's decision reinstated Bryant because of the Inspector General's actions, not Amtrak's use of the report.

*Homeland Security v. FLRA* (*DHS*)*,* 751 F.3d 665, 672 (D.C. Cir. 2014), vacated the arbitrator's award because the Amtrak Inspector General could not legally be governed by Rule 50 of the contract. *Nat'l R.R. Passenger Corp.*, 142 F. Supp. 3d at 90.

Collective bargaining agreements commonly contain procedures for resolving employee grievances, with arbitration as the final step.[5] The purpose is to settle labor-management disputes without resort to lockouts or work slowdowns or strikes. *See* 45 U.S.C. § 152. Although the Railway Labor Act gives district courts jurisdiction to review an arbitrator's award, *id.* § 153 First (q), the grounds on which a court may set aside an award are limited. One of the few such grounds is that the particular contractual provision at issue is contrary to "law or public policy." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987). *See also Hurd v. Hodge*, 334 U.S. 24, 34-35 (1948); *Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 84 (D.C. Cir. 1987); *Union Pacific R.R. Co. v. United Transp. Union*, 3 F.3d 255, 260-63 (8th Cir. 1993).[6]

---

[5] Under the Railway Labor Act, arbitration is "before the National Railroad Adjustment Board, § 3, or before an adjustment board established by the employer and the unions representing the employees. § 3 Second." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303-04 (1989). Amtrak and the FOP established an adjustment board in their collective bargaining agreement.

[6] Other courts of appeals have vacated arbitration awards that are contrary to law. *See, e.g.*, *Newsday, Inc. v. Long Island Typographical Union*, 915 F.2d 840, 844-45 (2d Cir. 1990); *Exxon Shipping Co. v. Exxon Seamen's Union*, 11 F.3d 1189, 1190-94 (3d Cir. 1993); *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360-64 (3d Cir. 1993); *Stroehmann Bakeries, Inc. v. Local 776*, 969 F.2d 1436, 1441-43 (3d Cir. 1992); *Gulf Coast Indus. Workers Union v. Exxon Co.*, 991 F.2d 244, 250 (5th Cir. 1993); *Amalgamated Meat Cutters & Butcher Workmen v. Great W. Food Co.*, 712 F.2d

As to the legality of applying Rule 50 to the Amtrak Inspector General, circuit precedent is directly on point. The court's decision in *DHS*, on which the district court relied, held that under the Inspector General Act of 1978,[7] "public sector unions and agencies can neither add to nor subtract from the OIG's investigatory authority through collective bargaining." 751 F.3d at 671. The *DHS* court agreed with the Fourth Circuit's decision that "proposals concerning Inspector General-investigation procedures are not 'appropriately the subject of bargaining,' because to allow such bargaining 'would impinge on the statutory independence of the'" Inspector General. *Id.* at 668 (quoting *U.S. Nuclear Regulatory Comm'n v. FLRA*, 25 F.3d 229, 234 (4th Cir. 1994)).[8]

---

122, 124-25 (5th Cir. 1983); *Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc.*, 819 F.2d 639, 643-44 (6th Cir. 1987); *Titan Tire Corp. of Freeport v. United Steel*, 734 F.3d 708, 729 (7th Cir. 2013); *Union Pac. R.R. Co. v. United Transp. Union*, 3 F.3d 255, 260-63 (8th Cir. 1993); *Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Bhd. of Elec. Workers*, 834 F.2d 1424, 1427 (8th Cir. 1987); *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1084 (9th Cir. 1993); *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1286 (9th Cir. 1982); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n*, 861 F.2d 665, 674 (11th Cir. 1988).

[7] Congress amended the Act in 1988 to establish Inspectors General in Amtrak and other "designated federal entities." Pub. L. No. 100-504, § 104, 102 Stat. 2515, 2522. The amendment gives these Inspectors General much of the same investigatory powers and independence as the original Inspectors General. 5 U.S.C. app. 3 § 8G.

[8] *DHS*, 751 F.3d at 670-71, distinguished *NASA v. FLRA*, 527 U.S. 229 (1999), for reasons unnecessary to repeat.

In its reply brief the FOP suggests that this case is different because it is "not a negotiability appeal wherein one party is attempting to foist a *new* term and condition of employment upon the other." Appellant Reply Br. at 4.[9] The FOP is correct that this is not a "negotiability appeal" – that is, the dispute here is not about whether Amtrak must bargain with the FOP about a provision governing the investigative procedures of the Amtrak Inspector General. The provision is already part of the collective bargaining agreement. But the FOP's observation fails to take into account the reason why *DHS* held that requiring bargaining about such a proposal is contrary to law. It is contrary to law because contractual provisions cannot "add to nor subtract from" an Inspector General's investigative authority under the Inspector General Act. *DHS*, 751 F.3d at 671. From this it follows that collective bargaining agreements "may not impose restrictions on the manner in which . . . Inspectors General conduct investigations." Statement of Interest Submitted by the United States of America at 8, *Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189*, 142 F. Supp. 3d 82 (D.D.C. 2015) (No. 14-cv-00678-GK), ECF No.

---

[9] Although we consider the FOP's passing mention of this difference in its reply brief, the "argument" doubtless came too late. The *DHS* decision was at the center of the district court's analysis. Yet the FOP's opening brief contained only one citation to *DHS*, and that was in its summary of argument, which pointed out the obvious chronological fact that the *DHS* opinion issued after the arbitrator issued her award. Appellant Br. at 11. The argument section of the FOP's opening brief never elaborated; it entirely ignored *DHS*. Our longstanding rule is that, for obvious reasons and with obvious exceptions (none of which apply here), arguments made for the first time in a reply brief will not be considered. *See, e.g.*, *Rollins Envtl. Services (NJ), Inc. v. EPA*, 937 F.2d 649, 654 n.2 (D.C. Cir. 1991), and cases following this rule.

26.[10] The FOP also fails to appreciate that an arbitration is itself "part and parcel of the ongoing process of collective bargaining." *United Paperworkers*, 484 U.S. at 38.

It makes no difference that *DHS* was decided after the arbitration award. *See* n.9 *supra*. That collective bargaining agreements may not regulate an Inspector General's investigatory authority has been the law for decades, as the Fourth Circuit's 1994 decision in *Nuclear Regulatory Commission v. FLRA* shows. 25 F.3d at 234. A federal court, reviewing an arbitration award, "may refuse to enforce contracts that violate law or public policy." *United Paperworkers*, 484 U.S. at 42 (citing *Hurd*, 334 U.S. at 35). Rule 50, as applied to the Amtrak Inspector General, is such a contractual provision and the district court was right in refusing to enforce the arbitrator's award based on that provision.

We do not reach the FOP's argument that the Quality Standards for Investigations – standards promulgated by the Council of the Inspectors General on Integrity and Efficiency to govern Inspector General investigations – require the same procedural protections as Rule 50. Appellant Br. at 23-24. The arbitrator did not rely on those standards. We also do not reach

---

[10] The United States cited, among other authorities, the following provisions of the Inspector General Act: a federal employer may not "prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation," 5 U.S.C. app. 3, § 8G(d)(1); and each "Inspector General, in carrying out the provisions of this Act, is authorized . . . to make such investigations and reports relating to the administration of the programs and operations of the applicable establishment as are, in the judgment of the Inspector General, necessary or desirable," *id.* § 6(a)(2). Statement of Interest Submitted by the United States of America, *supra*, at 7.

the FOP's claim that the Amtrak Police Department could not discharge Bryant without re-interviewing her and complying with the Rule 50 procedures. Appellant Reply Br. at 8-10. The arbitrator ordered Bryant reinstated because the Inspector General's investigator did not comply with Rule 50; the arbitrator did not rule that the Amtrak Police Department misused the Inspector General's report. *See* n.4 *supra*.

Further arbitration proceedings may be in order. The arbitrator rested entirely on the Amtrak Inspector General's noncompliance with Rule 50. The award must therefore be set aside. If the FOP raised additional contentions before the arbitrator, those remain subject to further arbitration proceedings.

Before ending this opinion, we shall respond to two of the dissent's points. The first is that *American Postal Workers Union v. U.S. Postal Service*, 789 F.2d 1 (D.C. Cir. 1986), supports the dissent's position. *Dissent* at 4. But that case is not at all comparable to this one. It involved, as the opinion in *American Postal Workers* put it, "a very routine dispute over the application of an evidentiary rule," a dispute that arose because the district court had substituted its interpretation of the collective bargaining agreement for the arbitrator's. 789 F.2d at 4, 6. Nothing of the sort is presented here. We have accepted – as the district court did – the arbitrator's interpretation that Rule 50 applies to the Amtrak Inspector General. The problem is that Rule 50, as thus applied, amounted to an illegal contractual provision. No such problem was presented in the *American Postal Workers* case. If it had been, the case would have come out differently: our court there wrote "that an arbitration award may not be enforced if it transgresses 'well defined' and 'dominant' 'laws and legal precedents.'" *Id.* at 8. Our court's opinion in *DHS* is such a precedent.

The dissent's other point is that in determining whether the arbitrator enforced an illegal contract, the court is confined to considering only the terms of the award, and may not take into account the arbitrator's explanation supporting the award. *Dissent* at 5-8. Even if the dissent's argument were valid, which is doubtful, it does not matter in this case, which may explain the FOP's failure to mention it. In addition to the arbitrator's 22-page opinion, the one-paragraph "Award" at the end of the opinion shows beyond doubt that the arbitrator was enforcing an illegal contractual term. The "Award" stated that Amtrak had to reinstate Bryant because the Amtrak Inspector General did not comply with Rule 50 of the collective bargaining agreement during her interview.[11]

*Affirmed.*

---

[11] The "Award" states in full:

> The Corporation did not have just cause to discharge Grievant Sarah Bryant because the procedural safeguards guaranteed to employees by Rule 50 of the parties' Agreement were not afforded her during the September 25, 2012 Amtrak OIG interrogation. Therefore, Grievant shall promptly be reinstated to her prior position and made whole, with payment of all back pay and benefits, and restoration of her seniority.

PILLARD, *Circuit Judge*, dissenting:

The majority's reliance on our decision in *U.S. Department of Homeland Security v. Federal Labor Relations Authority*, 751 F.3d 665 (D.C. Cir. 2015) (*DHS*), seems at first glance to make a lot of sense: If the statutory independence of Inspectors General prevents agencies from bargaining over their OIGs' investigative procedures, then arbitrators shouldn't be allowed to interpret investigative constraints an agency established via collective bargaining as applicable to its OIG. Like my colleagues in the majority, I respect the Inspector General Act and the binding precedent of our court applying it. The difficulty here is that in this case—unlike in *DHS*—we review an arbitrator's award under the Railway Labor Act, where the scope of judicial review is "amongst the narrowest known to the law." *Nw. Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 80 (D.C. Cir. 1987). Taking those cautionary words to heart, I do not believe we have a legal basis to vacate the arbitrator's award.

Federal law strongly supports settling labor disputes through final and binding arbitration. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596-98 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 582-83 (1960). As a general rule, courts may not second guess arbitrators' decisions on fact or law. *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 765 (1983). We lack jurisdiction even when we are convinced that the arbitrator "committed serious error." *Eastern Associated Coal Corp. v. United Mine Workers, Dist. 17*, 531 U.S. 57, 62 (2000); *see Am. Postal Workers Union v. U.S. Postal Serv.*, 789 F.2d 1, 5, 8 (D.C. Cir. 1986).

That is especially true when a labor dispute arises under the Railway Labor Act, which Congress enacted, *inter alia*, "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or

2

application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. The RLA's objective of swift, fair and final dispute resolution through arbitration depends critically on the Act's elimination of most opportunities for judicial review that would otherwise be available. *See Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 38 (1963). The text of the Act authorizes courts to set aside arbitration awards only in cases of (a) the arbitrator's failure "to comply with the requirements of this chapter" regarding the arbitration process, (b) lack of jurisdiction on the arbitrator's part, or (c) "fraud or corruption" by an arbitrator. 45 U.S.C. § 153 First (q); *see also Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978).

The majority finds grounds to vacate the award at issue under a judicially fashioned "public-policy" exception to the bar against judicial review of arbitral awards. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987); *W.R. Grace and Co.*, 461 U.S. at 766. But in the decades since the Supreme Court described the exception, neither that Court nor this one has yet to encounter a case in which it found reason to invoke it—until now. This case does not come close to meriting such an extraordinary step.

As the Supreme Court has envisioned it, the public policy exception would only be triggered by a public policy whose "explicit, well defined, and dominant" character could be "ascertained by reference to the laws and legal precedents." *Eastern Associated Coal Corp.*, 531 U.S. at 62-63. It applies only where the arbitral award violates that policy. *United Bhd. of Carpenters v. Operative Plasterers' Int'l Assoc.*, 721 F.3d 678, 697 (D.C. Cir. 2013); *Am. Postal Workers Union*, 789 F.2d at 8. In the face of unquestioned and vital public policy interests, the Court has declined to apply the public policy exception to vacate arbitrators' awards that seemed, at first

blush, to conflict with those interests. The Supreme Court rejected public-policy based challenges to arbitral awards reinstating a truck driver who tested positive for drugs, *Eastern Associated Coal Corp.*, 531 U.S. at 62-67, and an operator of dangerous machinery found sitting alone in a car in the company parking lot with a marijuana cigarette burning in the ashtray, *Misco, Inc.*, 484 U.S. at 33, 42-45. Even the nation's congressionally-codified commitments to civil-rights conciliation and compliance with nondiscrimination decrees did not, in the view of a unanimous Supreme Court, call for public-policy-based vacatur of an arbitral award enforcing male employees' contractual seniority against the equal-employment rights of women under a court-approved civil rights settlement. *W.R. Grace and Co.*, 461 U.S. at 764-70. In each case, the Supreme Court held itself powerless to second-guess the ways the arbitrators accommodated the asserted public policies—such as by reinstating an employee only under specified conditions, *Eastern Associated Coal Corp.*, 531 U.S. at 60-61, finding that the facts did not support the claim of marijuana possession on company property, *Misco, Inc.*, 484 U.S. at 40, 44-45, or simply by observing that the employer had "committed itself voluntarily to two conflicting contractual obligations" and so should absorb the cost of the breach rather than lay off senior employees whose contractual rights it settled away, *W.R. Grace and Co.*, 461 U.S. at 767-68.

In step with the Supreme Court, we too have taken an "*extremely narrow*" approach to the public policy exception. *Am. Postal Workers Union*, 789 F.2d at 8 (emphasis in original). We have expressly cautioned against "intrusive judicial review of arbitration awards under the guise of 'public policy.'" *Id.*; *see, e.g., U.S. Postal Serv. v. Nat'l Assoc. of Letter Carriers*, 810 F.2d 1239, 1241 (D.C. Cir. 1987); *Nw. Airlines*, 808 F.2d at 83; *U.S. Postal Serv. v. Nat'l Assoc. of Letter Carriers*, 789 F.2d 18, 20 (D.C. Cir. 1986).

We are bound to take the same approach here, and our decision in *American Postal Workers Union* closely maps the way. On that appeal, the U.S. Postal Service sought vacatur of an arbitrator's reinstatement of a postal worker fired for dishonesty in the handling of postal transactions. *See* 789 F.2d at 8. The arbitrator excluded from consideration an admission the worker made before he was given the *Miranda* warning the labor agreement required, then overturned the dismissal for want of evidence to support it. *Id*. at 3-4. Without questioning the public policy against embezzlement from the Postal Service, we harbored "no doubt that the instant case does not pose a situation requiring the invocation of a public policy exception." *Id*. at 8. The arbitrator's award "was not itself unlawful," nor did it "otherwise have the effect of mandating any illegal conduct." *Id*.

The arbitrator in this case determined that Amtrak could not justify its decision to fire Amtrak Police Officer Sarah Bryant by reference to results of an interrogation in which she was not afforded procedural rights guaranteed by the applicable labor agreement. The Police Officers' Bill of Rights, codified as Rule 50 of the parties' collective bargaining agreement, prevents adverse action against a covered employee based on her own statements if Amtrak obtained the statements through interrogation conducted without certain procedural safeguards. As part of its disciplinary process, Amtrak's Internal Affairs Unit interviewed Officer Bryant in compliance with Rule 50. The OIG, meanwhile, conducted its own investigation unconstrained by Rule 50. Amtrak's Internal Affairs investigation failed to yield evidence supporting Bryant's firing. The way the Inspector General had questioned Bryant then became an issue only because Amtrak wanted the OIG's report to do double duty—supporting personnel action against Bryant as well as, per the Inspector General Act of 1978, 5

U.S.C. App. 3 § 2, reporting to the agency head the results of audits and investigations.

The reasoning of the arbitrator's opinion did indeed fail to anticipate our decision in *DHS*, and I can readily see how the arbitrator's statement that the CBA's "Rule 50 does not exempt Amtrak OIG" is in tension with *DHS*'s rule that "public sector unions and agencies can neither add to nor subtract from the OIG's investigatory authority through collective bargaining." *DHS*, 751 F.3d at 671; *see* Maj. Op. at 4 & n. 4. But it exceeds the scope of our review to scrutinize whether the *arbitrator's reasoning* conflicts with the claimed "public policy." Our task "is limited to determining whether the award itself, as contrasted with the reasoning that underlies it, creates an explicit conflict with the law." SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 56:111 (Labor Arbitration Agreements–Confirmation and Enforcement of Awards–Effect of Violation of Law or Public Policy) (4th ed. 2016); *see also* LARRY E. EDMONSON, DOMKE ON COMMERCIAL ARBITRATION § 38:10 (3d ed. 2016) ("A court . . . will simply look whether the award itself violates public policy."). If the arbitrator's award does not itself direct a violation of law or an identifiable, well-defined and dominant public policy, we have no authority to disturb it.

The award here is fully compatible with the Inspector General's independence. The award did not require the OIG to bargain collectively, nor did it "conclude[] that Rule 50 bound the Inspector General" in contravention of *DHS*. Maj. Op. at 4. What the arbitrator ruled was:

> The Corporation did not have just cause to discharge Grievant Sarah Bryant because the procedural safeguards guaranteed to employees by Rule 50 of the parties' Agreement were not afforded her during the

> September 25, 2012, Amtrak OIG interrogation. Therefore, Grievant shall promptly be reinstated to her prior position and made whole, with payment of all back pay and benefits, and restoration of her seniority.

J.A. 220. The award merely invalidates Amtrak's discharge of Bryant based on an interrogation in which she was not afforded her procedural rights. As an arbitration award, it is case-specific, not precedential. *See U.S. Postal Serv.*, 789 F.2d at 21. The question for us is limited to whether the arbitral award—the award itself or the relief ordered, not the reasoning on which it rests—"compels conduct contrary to a well-defined public policy." *U.S. Postal Serv.*, 789 F.2d at 20. Nothing in this award compels any public policy violation. *Cf. W.R. Grace and Co.*, 461 U.S. at 767 (noting that nothing in the collective bargaining agreement, as interpreted by the arbitrator, required the company to violate the conciliation order).

The majority finds fault with my reading of the arbitrator's award as narrowly focused on Bryant's rights rather than more generally controlling the OIG's activities. *See* Maj. Op. at 4 n.4. The majority asserts that the arbitrator violated public policy because, in the arbitrator's opinion (and only there, not in her award), she reasoned "that the Inspector General 'must comply with' Rule 50." Maj. Op. at 4 n.4. But, again, the arbitrator's reasoning is not the yardstick against which compliance with public policy is measured. What matters is the award itself. *See Am. Postal Workers Union*, 789 F.2d at 8; WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 56:111. Here, the award announces that Amtrak lacked cause to fire Bryant because the procedural safeguards "guaranteed to employees by Rule 50 of the parties' Agreement were not afforded her." J.A. 220. Neither the arbitrator's award nor my preferred disposition of this appeal would require the Inspector General to conduct its independent watchdog role as auditor

and investigator, *see* 5 U.S.C. App. 3 § 2, in conformity with Rule 50. Here, as in *American Postal Workers*, the arbitrator's decision was "nothing more than a ruling on the admissibility of evidence, which drew its essence from the parties' contract and violated no established law." 789 F.2d at 3. Here, as there, we have "no choice in such a circumstance but to uphold and enforce the arbitrator's award." *Id.*

If Amtrak is unhappy with the arbitrator's application of the collective bargaining agreement, presumably it may "negotiate a modification" to authorize Inspector General reports to be used in employee disciplinary actions even after the OIG interrogates employees without respecting their Rule 50 rights. *Am. Postal Workers Union*, 789 F.2d at 7; *see also Nw. Airlines*, 808 F.2d at 84. And, without any change to the collective bargaining agreement, Amtrak's Office of Inspector General may in some or all of its investigations elect to question employees in a manner that qualifies its investigative fruits for use in Amtrak's disciplinary process. Nothing bars an Inspector General from voluntarily giving *Miranda* warnings, recording interviews, or informing employees of their right to have a union representative present.

The court's decision to vacate the arbitral award in this case contradicts decades of precedent delineating a narrow public policy exception and threatens as a practical matter to destabilize many, if not most, arbitral awards. Indeed, its impact may well reach beyond labor arbitration to commercial arbitration under the Federal Arbitration Act, as "[t]here is no doubt that the scope of review of arbitration in cases involving mandatory arbitration of statutory claims is at least as great as the judicial review available in the context of collective bargaining." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1486 (D.C. Cir. 1997) (emphasis omitted). Today's decision invites litigation in every case in which a disappointed party to

an arbitration can base its objection on some claim of error that places the award at odds with "law or public policy." Once arbitration becomes the start rather than the end of the dispute resolution process, it no longer serves the role Congress envisioned. Because I do not see how, consistent with binding precedent, the court can relieve Amtrak of its obligation to comply with its collective bargaining agreement and the arbitral awards rendered thereunder, I respectfully dissent.