# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 16, 2014        Decided June 3, 2014

No. 12-1457

UNITED STATES DEPARTMENT OF HOMELAND SECURITY U.S.
CUSTOMS AND BORDER PROTECTION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

NATIONAL TREASURY EMPLOYEES UNION,
INTERVENOR

———

Consolidated with 13-1073

———

On Petition for Review and
Cross-Application for Enforcement of
Final Decision of the Federal Labor Relations Authority

———

*Howard S. Scher*, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were *Stuart F. Delery*, Deputy Attorney General, and *Leonard Schaitman*, Attorney.

*Zachary R. Henige*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. On the brief were

*Rosa M. Koppel*, Solicitor, and *Douglas E. Callahan*, Attorney.

*Julie M. Wilson* argued the cause for intervenor. With her on the brief were *Gregory O'Duden*, *Larry J. Adkins*, and *Jacob Heyman-Kantor*.

Before: HENDERSON, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

*Circuit Judge* HENDERSON concurs in the judgment.

EDWARDS, *Senior Circuit Judge*: This case presents a petition for review filed by the United States Department of Homeland Security ("DHS") challenging a decision by the Federal Labor Relations Authority ("FLRA" or "Authority"). The dispute arose with the FLRA on a negotiability appeal filed by the National Treasury Employees Union ("NTEU" or "Union") under 5 U.S.C. § 7105(a)(2)(E) of the Federal Service Labor-Management Relations Statute ("FSLMRS").

NTEU and Customs and Border Protection ("CBP") – an agency within DHS – had negotiated a collective bargaining agreement that included the following provision:

> An employee [in CBP] being interviewed by a representative of the Agency (e.g., Department of Homeland Security Office of Inspector General) in connection with either a criminal or non-criminal matter has certain entitlements/rights regardless of who is conducting the interview.

Article 22, Section 2 ("Section 2"). *See* NTEU Petition for Review of Negotiability Issues, May 18, 2010, at 3-4, ¶ 9, *reprinted in* Joint Appendix ("J.A.") 10-11. NTEU explained that the proposed Section 2 was intended to have the following effects:

> The impact of the proposal is to obligate all employer representatives to abide by Article 22. Among other things, Article 22 requires that union officials receive advance notice of employee interviews; that interviews be conducted at the worksite; that employer representatives act professionally; that the employer representatives provide employees with specific negotiated forms with their rights outlined prior to conducting the interview; and that employer representatives advise employees of their right to union representation if the employee may be subject to discipline or adverse action before the interview is conducted. The impact, therefore, of the provision at issue is to obligate all employer representatives to adhere to these negotiated provisions when conducting investigatory interviews (criminal and noncriminal) of CBP bargaining unit employees. It specifically identifies employees from DHS's OIG as employer representatives when they conduct these investigations of CBP employees, but the provision would apply to any other individuals acting in that capacity, for that purpose.

NTEU Petition for Review of Negotiability Issues at 4-5, ¶ 12, *reprinted in* J.A. 11-12.

DHS objected to the collective bargaining agreement pursuant to § 7114(c) of the FSLMRS on the ground that procedures followed by DHS's Office of Inspector General ("OIG") in conducting its investigations are nonnegotiable.

After the Union and CBP severed Section 2 from their collective bargaining agreement, DHS approved the agreement without the provision, and the Union then filed a negotiability appeal with the Authority.

Before the FLRA, DHS pointed out that the OIG is an independent entity located within the agency but excluded from collective bargaining. DHS also pointed out that the OIG did not participate in the negotiations that culminated in the adoption of the disputed contract provision. DHS's principal argument, however, both before the Authority and in this court, rests on the Inspector General Act of 1978 ("IG Act"), 5 U.S.C. App. 3 §§ 1-13:

> An agency's duty to bargain in good faith under the FSLMRS applies only "to the extent" that duty is "not inconsistent with any Federal law." 5 U.S.C. 7117(a)(1). Collective bargaining for restrictions on the techniques and procedures employed by an OIG in conducting its investigations is inconsistent with federal law, namely, the Inspector General Act. The latter describes the OIG as an independent entity free from agency interference – including restrictions arrived at through collective bargaining – in the investigation of agency activities.

Br. for Pet'r at 16. In advancing this position, DHS relied heavily on the Fourth Circuit's decision in *U.S. Nuclear Regulatory Comm'n v. FLRA* ("*NRC*"), 25 F.3d 229, 235-36 (4th Cir. 1994) (holding that the OIG is not subject to collective bargaining under the FSLMRS, and it may not be bound by the terms of an agreement negotiated by a union on behalf of other employees in an agency).

The Authority rejected DHS's position and ruled that the disputed contract provision was negotiable. *National Treasury*

*Employees Union*, 66 F.L.R.A. 892, 892 (2012) ("*FLRA Decision*"). The FLRA held that the terms of Section 2 are not contrary to law, and therefore ordered DHS to rescind its disapproval of the provision. *Id*. at 900. The Authority declined to follow the Fourth Circuit's decision in *NRC*. *FLRA Decision*, 66 F.L.R.A. at 894. Instead, the Authority's decision rested principally on its interpretation of the Supreme Court's decision in *NASA v. FLRA* (*NASA*), 527 U.S. 229 (1999). *FLRA Decision*, 66 F.L.R.A. at 895-96.

*NASA* holds that, because an OIG investigator is a "representative of the agency" in certain circumstances, an employee may seek union representation during an OIG-conducted interview pursuant to the so-called "*Weingarten* rights" embodied in 5 U.S.C. § 7114(a)(2)(B). 527 U.S. at 246. This section of the FSLMRS was patterned after the decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975) (upholding a National Labor Relations Board decision that an employer's denial of an employee's request to have a union representative present at an investigatory interview, which the employee reasonably believed might result in disciplinary action, was an unfair labor practice under the National Labor Relations Act).

The statutory *Weingarten* rights provide:

(2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at-- . . .
  (B) any examination of an employee in the unit by a representative of the agency in connection with an investigation if-- (i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and (ii) the employee requests representation.

5 U.S.C. § 7114(a)(2)(B). The Authority acknowledged "that the statutory provision involved in *NASA* was § 7114(a)(2)(B) of the Statute, which is not at issue here." *FLRA Decision*, 66 F.L.R.A. at 895. The Authority "also acknowledge[d] that the Supreme Court did not resolve whether it would conflict with the IG Act to require bargaining over IG-investigation procedures." *Id*. Nonetheless, it held that "one of the primary purposes that Congress had in enacting the [FSLMRS] was to protect the right to bargain collectively," and this includes the right to bargain over the implementation of *Weingarten* rights. *Id*. at 896. We disagree.

The OIG is an independent entity. Although it is situated within an agency, it is excluded from the collective bargaining requirements of the FSLMRS. *See U.S. Dep't of Justice v. FLRA*, 39 F.3d 361, 365 & n.5 (D.C. Cir. 1994) (holding that section 7112(b)(7) "forbids the formation of bargaining units containing employees primarily engaged in investigating other agency employees to ensure they are acting honestly— an apt description of investigators working for the Inspector General"). Furthermore, proposals concerning Inspector General-investigation procedures are not "appropriately the subject of bargaining," because to allow such bargaining "would impinge on the statutory independence of the IG." *NRC*, 25 F.3d at 234. "[I]f we were to interpret the FSLMRS to require [an agency] to bargain over rights and procedures for investigatory interviews conducted by the Inspector General, we would indirectly be authorizing the parties to collective bargaining to compromise, limit, and interfere with the independent status of the Inspector General under the [IG Act]." *Id*. at 235.

Because we conclude that the proposal in Section 2 advanced by NTEU here would compromise the

independence of the OIG and would be "inconsistent" with the IG Act within the meaning of 5 U.S.C. § 7117(a)(1), we grant DHS's petition for review.

\* \* \* \*

Normally, "the court's role in reviewing the FLRA's negotiability determinations is narrow." *Am. Fed'n of Gov't Emps. v. FLRA*, 866 F.2d 1443, 1446 (D.C. Cir. 1989). Thus, in a typical case of this sort, we "will only reverse a negotiability finding of the Authority when the finding is not supported by substantial evidence, is inconsistent with the governing statute, represents an unexplained departure from prior agency determinations, or is otherwise arbitrary or capricious or not in accordance with the law." *Id.*

In this case, however, the FLRA's order was based on its conclusion that NTEU's bargaining proposal was not inconsistent with other federal law. In particular, the Authority determined that NTEU's proposed Section 2 was not inconsistent with the IG Act as it interpreted that Act. The FLRA, however, has no special competence in the interpretation of the IG Act, so we accord no deference to its interpretation of that statute. *See, e.g.*, *IRS v. FLRA*, 902 F.2d 998, 1000 (D.C. Cir. 1990); *Office of Pers. Mgmt. v. FLRA*, 864 F.2d 165, 171 (D.C. Cir. 1988). Therefore, we review *de novo* the Authority's decision insofar as it purports to construe the requirements of the IG Act. *NRC*, 25 F.3d at 232-33.

\* \* \* \*

The FLRA's decision in this case rests on two critical contentions: First, the Authority argues that it "properly concluded that [DHS's] claim was negated by the Supreme

Court's (post-*NRC*) holding in *NASA* . . . that IG independence already is constrained by employees' *Weingarten* right under the Statute." Br. for Resp't at 10. Second, the Authority argues that NTEU's proposed Section 2 is not inconsistent with the IG Act in purporting to regulate OIG investigation procedures. *Id*. at 10-11. We disagree with both points for the reasons explained below.

Before we address the principal issues in this case, however, we must first dispose of the Authority's argument that a number of claims raised by DHS are not properly before the court.

### 1. *Waiver*

The Authority asserts that DHS waived a number of claims that they have presented to the court by failing to properly raise them in the first instance with the FLRA as required by § 7123(c) of the FSLMRS. According to the FLRA, "[DHS's] submissions to the Authority did not identify, much less discuss, any section of the IG Act besides § 6(a)(2)." Br. for Resp't at 23. The FLRA thus contends that this court is barred from considering, *inter alia*, whether sections of the IG Act other than section 6(a)(2) are incompatible with the collective bargaining requirements of the FSLMRS; whether the 2008 amendments to the IG Act and the legislative history of those amendments reinforce and strengthen the OIG's independence; and whether 5 U.S.C. § 7112(b)(7) excludes the OIG from engaging in collective bargaining or being bound by the terms of collective bargaining between the union and the agency. We find no merit in FLRA's waiver argument.

DHS's position before this court that neither CBP nor any other agency within DHS has authority to bargain on behalf of

the OIG is surely encompassed within the DHS's statement of the "issue" before the FLRA, which was "whether the [agency] and the [union] may negotiate the specific procedures to be followed by the DHS OIG when performing its auditing and investigating functions." DHS Statement of Position on NTEU Petition for Review of Negotiability Issues, *reprinted in* J.A. 39. In addition, DHS's argument below was that the OIG is not a representative of the agency for purposes of collective bargaining, *id.* at J.A. 41, and that the OIG more generally cannot be bound by terms negotiated by union and agency officials because such interference with the OIG's "independent status" would be "inconsistent with the IG Act," *id.* at J.A. 40; *see also* Br. for Pet'r at 33. The FLRA obviously understood DHS's position because it acknowledges that it "examined the Statute for indications that Congress intended to completely preclude collective bargaining over all IG-investigation procedures" and "found none." Br. for Resp't at 17.

In its brief to this court, DHS points out that, before the Authority, it "cited *NRC* 'as a case directly on point' and relied on it extensively. The Authority therefore knew that the agency's argument was that bargaining over [Section 2] was incompatible with the IG Act *as a whole*, and it also knew that that argument depended on the numerous provisions of the IG Act discussed in *NRC*. Indeed, the fact that the Authority rejected *NRC* as persuasive authority means the Authority was fully aware of the *NRC* analysis." Reply Br. for Pet'r at 13 (citations and footnote omitted). We agree.

It is evident from the record in this case that, even though DHS did not itself cite every relevant provision in the IG Act in the proceedings below, the agency's principal argument was that the accumulated provisions of the IG Act were inconsistent with collective bargaining over OIG procedures.

This point could not have been lost on the FLRA because it was the thrust of the *NRC* decision. Therefore, the Authority reasonably should have understood the full extent of DHS's argument. *See NetworkIP, LLC v. FCC*, 548 F.3d 116, 122 (D.C. Cir. 2008) (explaining that an issue "need not be raised explicitly; it is sufficient if the issue was 'necessarily implicated' in agency proceedings"). We therefore hold that DHS did not waive any of the claims that it has presented to this court.

## 2.   *The Supreme Court's Decision in* NASA v. FLRA

In *NASA*, the Supreme Court held that "§ 7114(a)(2)(B) is not limited to agency investigators representing an 'entity' that collectively bargains with the employee's union." 527 U.S. at 237. In other words, the Court made it clear that even though the OIG does not engage in collective bargaining under the FSLMRS, OIG investigators who work for an agency such as DHS can be "representatives of the agency" *under § 7114(a)(2)(B)*. Because "an OIG's investigative office, as contemplated by the [IG Act], is performed with regard to, and on behalf of, the particular agency in which it is stationed . . . the investigators employed in [the agency's] OIG are unquestionably 'representatives' of [the agency] when acting within the scope of their employment." *Id*. at 240.

The Court in *NASA* further explained that:

[T]he right Congress created in § 7114(a)(2)(B) vindicates obvious countervailing federal policies. It provides a procedural safeguard for employees who are under investigation by their agency, and the mere existence of the right can only strengthen the morale of the federal workforce. The interest in fair treatment for

employees under investigation is equally strong whether they are being questioned by employees in [the agency's] OIG or by other representatives of the agency.

*Id.* at 244-45. The Court's holding is no more surprising than would be a decision that OIG investigators are subject to proscriptions against employment discrimination based on race or sex. *Id.* at 240 n.4. The *Weingarten* right embodied in § 7114(a)(2)(B) is an overriding federal protection that takes precedence over the right to engage in collective bargaining under the FSLMRS and the OIG's authority to pursue investigations under the IG Act. Unions and federal employers cannot negotiate a collective bargaining agreement that diminishes the rights afforded by § 7114(a)(2)(B), and OIG investigators cannot deny federal employees their *Weingarten* rights during the course of OIG investigations.

In our view, the Supreme Court's decision in *NASA* does not justify the Authority's position in this case. The Authority has essentially conceded this. *FLRA Decision*, 66 F.L.R.A. at 895. Indeed, the Authority has acknowledged "that the Supreme Court did not resolve whether it would conflict with the IG Act to require bargaining over IG-investigation procedures." *Id.* The Court in *NASA* found it unnecessary to "consider whether the outer limits of the Authority's interpretation [of § 7114(a)(2)(B)] so obstruct the performance of an OIG's statutory responsibilities that the right must be more confined." 527 U.S. at 244. It is noteworthy, however, that the Court cited the Fourth Circuit's decision in *NRC* to highlight the "OIG's concerns that the reach of § 7114(a)(2)(B) will become the subject of collective bargaining between agencies and unions." *Id.* at 244 n.8. If the FLRA's decision in this case were upheld, the concerns noted in *NASA* would be realized.

DHS makes the telling point that the Supreme Court's decision in *NASA* does not in any way suggest that the OIG is the representative of an agency for collective bargaining purposes under the FSLMRS:

> *NASA* did not hold that the OIG is a "representative of the agency" *for all purposes* and, indeed, specifically said its decision was limited to the *Weingarten* right itself and no more. *NASA* found a specific textual basis for holding that an OIG is "a representative of the agency" for purposes of Section 7114(a)(2)(B), but no textual source exists for extending representative status to collective bargaining or the results of such bargaining.

Br. for Pet'r at 9. We agree.

The holding in *NASA* is limited to the right of a union representative to attend an employee examination as specified in § 7114(a)(2)(B), which is only if "(i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and (ii) the employee requests representation." Section 7114(a)(2)(B) says nothing about the matters covered by the NTEU's proposal in Section 2, such as "the extent to which a union representative may participate in the examination (by raising objections or asking for breaks in the examination to discuss questions with the employee), whether the union or the employee is entitled to notice of the examination, what type of notice is required, whether the employee is entitled to warnings, or what such warnings might say." Br. for Pet'r at 15. And the Court's decision in *NASA* certainly does not suggest that OIG investigations can be regulated in any of these ways pursuant to the terms of a collective bargaining agreement.

In sum, we reject the Authority's interpretation of the *NASA* decision. The Court's decision in that case simply cannot be stretched to support the Authority's decision here.

**3.    *Proposals to Regulate OIG Investigations Authorized by the IG Act Are Not Proper Subjects of Collective Bargaining Under the FSLMRS***

The OIG is not subject to collective bargaining under the FSLMRS. *See NRC*, 25 F.3d at 235; *U.S. Dep't of Justice v. FLRA*, 39 F.3d at 365 & n.5. The Authority does not dispute this. Therefore, "[h]aving excluded employees of the Office of Inspector General from any collective bargaining, Congress surely could not have intended that other employees in an agency be given the right to negotiate the conditions of work for Inspector General employees." *NRC*, 25 F.3d at 235. OIG inspectors are obliged to respect an employee's *Weingarten* rights as required by § 7114(a)(2)(B). But public sector unions and agencies can neither add to nor subtract from the OIG's investigatory authority through collective bargaining.

Furthermore, the FSLMRS exempts from its negotiation requirements any provisions that are "inconsistent with any Federal law or any Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1). It cannot be disputed that the intended reach of NTEU's proposed Section 2 is much broader than the *Weingarten* rights embodied in § 7114(a)(2)(B). Therefore, Section 2 impermissibly interferes with the OIG in two ways: first, it requires more of OIG inspectors than *Weingarten* itself requires; second, it purports to impose contractual obligations on the OIG even though the OIG is not a party to the collective bargaining agreement and is not subject to the bargaining requirements of the FSLMRS.

Section 2 would require employee investigations to be conducted as the Union would prefer, not as an OIG investigator might think best depending upon the circumstances of the case. This is inconsistent with the OIG's authority under the IG Act to serve as an "independent and objective" unit, "to conduct and supervise audits and investigations relating to [certain] programs and operations . . . [and] provide leadership and coordination and recommend policies for activities designed (A) to promote economy, efficiency, and effectiveness in the administration of, and (B) to prevent and detect fraud and abuse in, such programs and operations." 5 U.S.C. app. 3 § 2.

The important point, however, "is not that particular negotiated procedures interfere with specific aspects of OIG authority under the Inspector General Act but, rather, that negotiation in and of itself is antithetical to OIG independence established by the Inspector General Act." Br. for Pet'r at 30. Under the IG Act, Inspectors General are "appointed by the President" with "the advice and consent of the Senate, without regard to political affiliation and solely on the basis of integrity and demonstrated ability in accounting, auditing, financial analysis, law, management analysis, public administration, or investigations." 5 U.S.C. app. 3 § 3(a). The IG Act also forbids the OIG from having any "program operating responsibilities." *Id.* § 9(a). The OIG has power to select and employ whatever personnel are necessary to conduct its business, to employ experts and consultants, and to enter into contracts for audits, studies, and other necessary services. *Id.* §§ 3(d), 6(a). And other than the "general supervision" of the agency head and one deputy, an OIG "shall not report to, or be subject to supervision by, any other officer of such [agency]." *Id.* § 3(a).

In *NRC*, the Fourth Circuit further explained the OIG's investigatory authority under the IG Act:

> [S]hielded with independence from agency interference, the Inspector General in each agency is entrusted with the responsibility of auditing and investigating the agency, a function which may be exercised in the judgment of the Inspector General as each deems it "necessary or desirable." 5 U.S.C. App. 3 § 6(a)(2). To facilitate that function, the Act gives to each Inspector General access to the agency's documents and agency personnel. The Inspector General may issue subpoenas, administer oaths, and investigate complaints and information from any employee of the agency "concerning the possible existence of an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to the public health and safety." 5 U.S.C. App. 3 § 7(a).

*NRC*, 25 F.3d at 234.

In light of the foregoing, we agree with the judgment of the Fourth Circuit in *NRC*. Because we cannot say it better, we adopt the reasoning of our sister circuit:

> [P]roposals which concern investigations conducted by the Inspector General, such as those at issue here, are not appropriately the subject of bargaining between an agency and a union. Such proposals run afoul of the Inspector General Act's mandate that it is the Inspector General who has the authority to "conduct, supervise, and coordinate audits and investigations" relating to the [agency]. Congress intended that the Inspector General's investigatory authority include the power to determine

when and how to investigate. To allow the [agency] and the Union, which represents the [agency's] employees, to bargain over restrictions that would apply in the course of the Inspector General's investigatory interviews in the agency would impinge on the statutory independence of the Inspector General. . . . [Proposals] establishing employee rights and procedures for conducting investigatory interviews are therefore inconsistent with the Inspector General's independence and the Inspector General Act.

*NRC*, 25 F.3d at 234. We also agree with the Fourth Circuit that, in reaching this conclusion, "we do not limit the right of the [agency] and the Union to negotiate employee rights and procedures for any investigations that may be conducted by other employees of the [agency], who are not from the Office of the Inspector General." *Id*.

## CONCLUSION

For the reasons discussed above, we hereby reverse the decision of the Authority and grant DHS's petition for review.

*So ordered.*