Dissenting Opinion filed by Circuit Judge PILLARD.
RANDOLPH, Senior Circuit Judge:
This is an appeal from the judgment of the district court vacating an arbitrator’s award. The arbitrator ruled that the National Railroad Passenger Corporation— “Amtrak” — must reinstate, with backpay *337 and lost seniority, an employee Amtrak fired for misconduct. A union — the Fraternal Order of Police, Lodge 189 — brought the arbitration on the employee’s behalf. The issue is whether “procedural limitations on the conduct of internal investigations contained in a collective bargaining agreement between Amtrak and the FOP” bind the Amtrak Office of Inspector General. Nat’l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189, 142 F.Supp.3d 82, 83 (D.D.C. 2015).
Amtrak has its own police force.[1] A provision in the Amtrak-FOP June 2010 collective bargaining agreement is entitled “Police Officers Bill of Rights.” The preamble to this provision — Rule 50 of the agreement — states that the “Police Department has established the following procedures to govern the conduct and control of interrogations.” Among the procedures are these: the investigator must inform the employee of his right to delay questioning in order to have a union representative present; if the employee is suspected of criminal activity, the investigator must give Miranda[2] warnings; and the investigator must record the interview “mechanically or by a stenographer.” The fired employee, Sarah Bryant, was an officer in the Canine Unit of the Amtrak Police Department. In 2011, Amtrak’s Office of Inspector General received an anonymous tip that Officer Bryant jointly owned a home in Maryland with her supervisor, Inspector William Parker, and that Parker had been giving Bryant a disproportionate number of assignments commanding a higher rate of pay. The Amtrak Police Department’s Internal Affairs Unit received the same tip and opened an investigation. Amtrak police interviewed Bryant twice. Both times the police complied with Rule 50. In those two interviews, Bryant maintained that she was only Parker’s tenant. The Police Department closed its investigation in June 2012 without recommending any sanctions.
In September of the same year, an Inspector General investigator interviewed Bryant. The investigator did not record the interview or inform Bryant of her right to have a union representative present. The investigator gave Bryant some warnings,[3] but did not inform her that she had a right to counsel or that counsel would be appointed if she could not afford an attorney.
The Inspector General’s report concluded that Bryant had lied about being Parker’s tenant during her earlier interview with Amtrak’s Police Department. The deed on the house where she resided listed her as a co-owner and the loan documents listed her as a co-borrower on the property’s second mortgage. The Inspector General also found that Bryant had falsified an affidavit claiming a tax exemption for first-time home buyers.
After receiving the Inspector General’s report, the Amtrak Police Department suspended Bryant, pending a disciplinary conference. At the conference, Bryant refused *338 to resign. The Police Department terminated her on December 3, 2012.
After Bryant unsuccessfully appealed the decision within Amtrak, she sought arbitration pursuant to the collective bargaining agreement’s grievance procedure. On her behalf, the FOP claimed that she had been fired without just cause. Without reaching that claim, the arbitrator determined that Bryant should be reinstated because the Inspector General’s investigator, when interviewing her, had not fully complied with the contract’s Rule 50 procedures. Although this provision of the collective bargaining agreement does not mention the Amtrak Office of the Inspector General, and although the Amtrak Inspector General did not participate in the Amtrak-FOP contract negotiations and did not sign the agreement, the arbitrator concluded that Rule 50 bound the Inspector General. Rule 50, the arbitrator wrote, applies to “all bargaining unit member interrogations” and “does not exempt” the Inspector General.[4]
Pursuant to the Railway Labor Act, Amtrak brought an action in district court, seeking an order setting aside the arbitrator’s award. See Railway Labor Act, 45 U.S.C. § 153 First (q). The district court, relying on the Inspector General Act of 1978, 5 U.S.C. app. 3, §§ 1-13, and U.S. Department of Homeland Security v. FLRA (DHS), 751 F.3d 665, 672 (D.C. Cir. 2014), vacated the arbitrator’s award because the Amtrak Inspector General could not legally be governed by Rule 50 of the contract. Nat'l R.R. Passenger Corp., 142 F.Supp.3d at 90.
Collective bargaining agreements commonly contain procedures for resolving employee grievances, with arbitration as the final step.[5] The purpose is to settle labor-management disputes without resort to lockouts or work slowdowns or strikes. See 45 U.S.C. § 152. Although the Railway Labor Act gives district courts jurisdiction to review an arbitrator’s award, id. § 153 First (q), the grounds on which a court may set aside an award are limited. One of the few such grounds is that the particular contractual provision at issue is contrary to “law or public policy.” United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). See also Hurd v. Hodge, 334 U.S. 24, 34-35, 68 S.Ct. 847, 92 L.Ed. 1187 (1948); Nw. Airlines, Inc. v. Air Line Pilots Ass’n, Int'l, 808 F.2d 76, 84 (D.C. Cir. 1987); Union Pacific R.R. Co. v. United Transp. Union, 3 F.3d 255, 260-63 (8th Cir. 1993).[6]
*339 As to the legality of applying Rule 50 to the Amtrak Inspector General, circuit precedent is directly on point. The court’s decision in DHS, on which the district court relied, held that under the Inspector General Act of 1978,[7] “public sector unions and agencies can neither add to nor subtract from the OIG’s investigatory authority through collective bargaining.” 751 F.3d at 671. The DHS court agreed with the Fourth Circuit’s decision that “proposals concerning Inspector General-investigation procedures are not ‘appropriately the subject of bargaining,’ because to allow such bargaining ‘would impinge on the statutory independence of the’ ” Inspector General. Id. at 668 (quoting U.S. Nuclear Regulatory Comm’n v. FLRA, 25 F.3d 229, 234 (4th Cir. 1994)).[8]
In its reply brief the FOP suggests that this case is different because it is “not a negotiability appeal wherein one party is attempting to foist a new term and condition of employment upon the other.” Appellant Reply Br. at 4.[9] The FOP is correct that this is not a “negotiability appeal” — that is, the. dispute here is not about whether Amtrak must bargain with the FOP about a provision governing the investigative procedures of the Amtrak Inspector General. The provision is already part of the collective bargaining agreement. But the FOP’s observation fails to take into - account the reason why DHS held that requiring bargaining about such a proposal is contrary to law. It is contrary to law because contractual provisions cannot “add to nor subtract from” an Inspector General’s investigative authority under the Inspector General Act. DHS, 751 F.3d at 671. From this it follows that collective bargaining agreements “may not impose, restrictions on the manner in which ... Inspectors General conduct investigations.” Statement of Interest Submitted by the United States of America at 8, Nat’l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189, 142 F.Supp.3d 82 (D.D.C. 2015) (No. 14-cv-00678-GK), ECF No. 26.[10] The FOP also fails to appreciate *340 that an arbitration is itself “part and parcel of the ongoing process of collective bargaining.” United Paperworkers, 484 U.S. at 38, 108 S.Ct. 364.
It makes no difference that DHS was decided after the arbitration award. See n.9 supra. That collective bargaining agreements may not regulate an Inspector General’s investigatory authority has been the law for decades, as the Fourth Circuit’s 1994 decision in Nuclear Regulatory Commission v. FLRA shows. 25 F.3d at 234. A federal court, reviewing an arbitration award, “may refuse to enforce contracts that violate law or public policy.” United Paperworkers, 484 U.S. at 42, 108 S.Ct. 364 (citing Hurd, 334 U.S. at 35, 68 S.Ct. 847). Rule 50, as applied to the Amtrak Inspector General, is such a contractual provision and the district court was right in refusing to enforce the arbitrator’s award based on that provision.
We do not reach the FOP’s argument that the Quality Standards for Investigations — standards promulgated by the Council of the Inspectors General on Integrity and Efficiency to govern Inspector General investigations — require the same procedural protections as Rule 50. Appellant Br. at 23-24. The arbitrator did not rely on those standards. We also do not reach the FOP’s claim that the Amtrak Police Department could not discharge Bryant without re-interviewing her and complying with the Rule 50 procedures. Appellant Reply Br. at 8-10. The arbitrator ordered Bryant reinstated because the Inspector General’s investigator did not comply with Rule 50; the arbitrator did not rule that the Amtrak Police Department misused the Inspector General’s report. See n.4 supra.
Further arbitration proceedings may be in order. The arbitrator rested entirely on the Amtrak Inspector General’s noncompliance with Rule 50. The award must therefore be set aside. If the FOP raised additional contentions before the arbitrator, those remain subject to further arbitration proceedings.
Before ending this opinion, we shall respond to two of the dissent’s points. The first is that American Postal Workers Union v. U.S. Postal Service, 789 F.2d 1 (D.C. Cir. 1986), supports the dissent’s position. Dissent at 343. But that case is not at all comparable to this one. It involved, as the opinion in American Postal Workers put it, “a very routine dispute over the application of an evidentiary rule,” a dispute that arose because the district court had substituted its interpretation of the collective bargaining agreement for the arbitrator’s. 789 F.2d at 4, 6. Nothing of the sort is presented here. We have accepted — -as the district court did — the arbitrator’s interpretation that Rule 50 applies to the Amtrak Inspector General. The problem is that Rule 50, as thus applied, amounted to an illegal contractual provision. No such problem was presented in the American Postal Workers case. If it had been, the case would have come out differently: our court there wrote “that an arbitration award may not be enforced if it transgresses ‘well defined’ and ‘dominant’ ‘laws and legal precedents.’” Id. at 8. Our court’s opinion in DHS is such a precedent.
*341 The dissent’s other point is that in determining whether the arbitrator enforced an illegal contract, the court is confined to considering only the terms of the award, and may not take into account the arbitrator’s explanation supporting the award. Dissent at 343-45. Even if the dissent’s argument were valid, which is doubtful, it does not matter in this case, which may explain the FOP’s failure to mention it. In addition to the arbitrator’s 22-page opinion, the one-paragraph “Award” at the end of the opinion shows beyond doubt that the arbitrator was enforcing an illegal contractual term. The “Award” stated that Amtrak had to reinstate Bryant because the Amtrak Inspector General did not comply with Rule 50 of the collective bargaining agreement during her interview.[11]

Affirmed.

. Amtrak is a District of Columbia corporation created by Congress. See Lebron v. Nat’l R.R. Passenger Corp., 513 U.S. 374, 383-86, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995).

. That is, the interviewer must inform the individual “that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.” Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

.Bryant signed a statement certifying she understood that she had the right to remain silent; that anything she said could be used against her in a criminal or disciplinary proceeding; arid that Amtrak could not terminate her for remaining silent, but could use her silence in a disciplinary proceeding.

. The dissent seems to think that the arbitrator did not order Bryant reinstated because the Inspector General violated Rule 50. Dissent at 343. That is not correct. The arbitrator decided that the Inspector General "must comply with” Rule 50. The arbitrator's decision reinstated Bryant because of the Inspector General's actions, not Amtrak’s use of the report.

. Under the Railway Labor Act, arbitration is "before the National Railroad Adjustment Board, § 3, or before an adjustment board established by the employer and the unions representing the employees. § 3 Second.” Consol. Rail Corp. v. Ry. Labor Executives’ Ass'n, 491 U.S. 299, 303-04, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Amtrak and the FOP established an adjustment board in their collective bargaining agreement.

. Other courts of appeals have vacated arbitration awards that are contrary to law. See, e.g., Newsday, Inc. v. Long Island Typographical Union, 915 F.2d 840, 844-45 (2d Cir. 1990); Exxon Shipping Co. v. Exxon Seamen’s Union, 11 F.3d 1189, 1190-94 (3d Cir. 1993); Exxon Shipping Co. v. Exxon Seamen’s Union, 993 F.2d 357, 360-64 (3d Cir. 1993); Stroehmann Bakeries, Inc. v. Local 776, 969 F.2d 1436, 1441-43 (3d Cir. 1992); Gulf Coast Indus. Workers Union v. Exxon Co., 991 F.2d 244, 250 (5th Cir. 1993); Amalgamated Meat Cutters & Butcher Workmen v. Great W. Food Co., 712 F.2d 122, 124-25 (5th Cir. 1983); Prof'l Adm’rs Ltd. v. Kopper-Glo Fuel, Inc., *339 819 F.2d 639, 643-44 (6th Cir. 1987); Titan Tire Corp. of Freeport v. United Steel, 734 F.3d 708, 729 (7th Cir. 2013); Union Pac. R.R. Co. v. United Transp. Union, 3 F.3d 255, 260-63 (8th Cir. 1993); Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Bhd. of Elec. Workers, 834 F.2d 1424, 1427 (8th Cir. 1987); Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1084 (9th Cir. 1993); Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv., 682 F.2d 1280, 1286 (9th Cir. 1982); Delta Air Lines, Inc. v. Air Line Pilots Ass’n, 861 F.2d 665, 674 (11th Cir. 1988).

. Congress amended the Act in 1988 to establish Inspectors General in Amtrak and other "designated federal entities.” Pub. L. No. 100-504, § 104, 102 Stat. 2515, 2522. The amendment gives these Inspectors General much of the same investigatory powers and independence as the original Inspectors General. 5 U.S.C. app. 3 § 8G.

. DHS, 751 F.3d at 670-71, distinguished NASA v. FLRA, 527 U.S. 229, 119 S.Ct. 1979, 144 L.Ed.2d 258 (1999), for reasons unnecessary to repeat.

. Although we consider the FOP’s passing mention of this difference in its reply brief, the "argument” doubtless came too late. The DHS decision was at the center of the district court’s analysis. Yet the FOP’s opening brief contained only one citation to DHS, and that was in its summary of argument, which pointed out the obvious chronological fact that the DHS opinion issued after the arbitrator issued her award. Appellant Br. at 11. The argument section of the FOP’s opening brief never elaborated; it entirely ignored DHS. Our longstanding rule is that, for obvious reasons and with obvious exceptions (none of which apply here), arguments made for the first time in a reply brief will not be considered. See, e.g., Rollins Envtl. Services (NJ), Inc. v. EPA, 937 F.2d 649, 654 n.2 (D.C. Cir. 1991), and cases following this rule.

. The United States cited, among other authorities, the following provisions of the Inspector General Act: a federal employer may *340 not “prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation,” 5 U.S.C. app. 3, § 8G(d)(1); and each "Inspector General, in carrying out the provisions of this Act, is authorized ... to make such investigations and reports relating to the administration of the programs and operations of the applicable establishment as are, in the judgment of the Inspector General, necessary or desirable,” id. § 6(a)(2). Statement of Interest Submitted by the United States of America, supra, at 7.

. The “Award” states in full:
The Corporation did not have just cause to discharge Grievant Sarah Bryant because the procedural safeguards guaranteed to employees by Rule 50 of the parties' Agreement were not afforded her during the September 25, 2012 Amtrak OIG interrogation. Therefore, Grievant shall promptly be reinstated to her prior position and made whole, with payment of all back pay and benefits, and restoration of her seniority.