PILLARD, Circuit Judge,
dissenting:
The majority’s reliance on our decision in U.S. Department of Homeland Security v. Federal Labor Relations Authority, 751 F.3d 665 (D.C. Cir. 2014) (DHS), seems at first glance to make a lot of sense: If the statutory independence of Inspectors General prevents agencies from bargaining over their OIGs’ investigative procedures, then arbitrators shouldn’t be allowed to interpret investigative constraints an agency established via collective bargaining as applicable to its OIG. Like my colleagues in the majority, I respect the Inspector General Act and the binding precedent of our court applying it. The difficulty here is that in this case — unlike in DHS — we review an arbitrator’s award under the Railway Labor Act, where the scope of judicial review is “amongst the narrowest known to the law.” Nw. Airlines, Inc. v. Air Line Pilots Ass’n, Int’l, 808 F.2d 76, 80 (D.C. Cir. 1987). Taking those cautionary words to heart, I do not believe we have a legal basis to vacate the arbitrator’s award.
Federal law strongly supports settling labor disputes through final and binding arbitration. See United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596-98, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). As a general rule, courts may not second guess arbitrators’ decisions on fact or law. W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 765, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). We lack jurisdiction even when we are convinced that the arbitrator “committed serious error.” Eastern Associated Coal Corp. v. United Mine Workers, Dist. 17, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000); see Am. Postal Workers Union v. U.S. Postal Serv., 789 F.2d 1, 5, 8 (D.C. Cir. 1986).
That is especially true when a labor dispute arises under the Railway Labor Act, which Congress enacted, inter alia, “to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.” 45 U.S.C. § 151a. The RLA’s objective of swift, fair and final dispute resolution through arbitration depends critically on the Act’s elimination of most opportunities for judicial review that would otherwise be available. See Bhd. of Locomotive Eng’rs v. *342 Louisville & Nashville R.R. Co., 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). The text of the Act authorizes courts to set aside arbitration awards only-in cases of (a) the arbitrator’s failure “to comply with the requirements of this chapter” regarding the arbitration process, (b) lack of jurisdiction on the arbitrator’s part, or (c) “fraud or corruption” by an arbitrator. 45 U.S.C. § 153 First (q); see also Union Pacific R.R. Co. v. Sheehan, 439 U.S. 89, 93, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).
The majority finds grounds to vacate the award at issue under a judicially fashioned “public-policy” exception to the bar against judicial review of arbitral awards. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); W.R. Grace and Co., 461 U.S. at 766, 103 S.Ct. 2177. But in the decades since the Supreme Court described the exception, neither that Court nor this one has yet to encounter a case in which it found reason to invoke it — until now. This case does not come close to meriting such an extraordinary step.
As the Supreme Court has envisioned it, the public policy exception would only be triggered by a public policy whose “explicit, well defined, and dominant” character could be “ascertained by reference to the laws and legal precedents.” Eastern Associated Coal Corp., 531 U.S. at 62-63, 121 S.Ct. 462. It applies only where the arbi-tral award violates that policy. United Bhd. of Carpenters v. Operative Plasterers’ Int’l Assoc., 721 F.3d 678, 697 (D.C. Cir. 2013); Am. Postal Workers Union, 789 F.2d at 8. In the face of unquestioned and vital public policy interests, the Court has declined to apply the public policy exception to vacate arbitrators’ awards that seemed, at first blush, to conflict with those interests. The Supreme Court rejected public-policy based challenges to arbi-tral awards reinstating a truck driver who tested positive for drugs, Eastern Associated Coal Corp., 531 U.S. at 62-67, 121 S.Ct. 462, and an operator of dangerous machinery found sitting alone in a car in the company parking lot with a marijuana cigarette burning in the ashtray, Misco, Inc., 484 U.S. at 33, 42-45, 108 S.Ct. 364. Even the nation’s congressionally-codified commitments to civil-rights conciliation and compliance with nondiscrimination decrees did not, in the view of a unanimous Supreme Court, call for public-policy-based vacatur of an arbitral award enforcing male employees’ contractual seniority against the equal-employment rights of women under a court-approved civil rights settlement. W.R. Grace and Co., 461 U.S. at 764-70, 103 S.Ct. 2177. In each case, the Supreme Court held itself powerless to second-guess the ways the arbitrators accommodated the asserted public policies— such as by reinstating an employee only under specified conditions, Eastern Associated Coal Corp., 531 U.S. at 60-61, 121 S.Ct. 462, finding that the facts did not support the claim of marijuana possession on company property, Misco, Inc., 484 U.S. at 40, 44-45, 108 S.Ct. 364, or simply by observing that the employer had “committed itself voluntarily to two conflicting contractual obligations” and so should absorb the cost of the breach rather than lay off senior employees whose contractual rights it settled away, W.R. Grace and Co., 461 U.S. at 767-68, 103 S.Ct. 2177.
In step with the Supreme Court, we too have taken an “extremely narrow” approach to the public policy exception. Am. Postal Workers Union, 789 F.2d at 8 (emphasis in original). We have expressly cautioned against “intrusive judicial review of arbitration awards under the guise of ‘public policy.’ ” Id.; see, e.g., U.S. Postal Serv. v. Nat’l Assoc. of Letter Carriers, 810 F.2d 1239, 1241 (D.C. Cir. 1987); Nw. Airlines, 808 F.2d at 83; U.S. Postal Serv. v. Nat’l *343 Assoc. of Letter Carriers, 789 F.2d 18, 20 (D.C. Cir. 1986).
We are bound to take the same approach here, and our decision in American Postal Workers Union closely maps the way. On that appeal, the U.S. Postal Service sought vacatur of an arbitrator’s reinstatement of a postal worker fired for dishonesty in the handling of postal transactions. See 789 F.2d at 8. The arbitrator excluded from consideration an admission the worker made before he was given the Miranda warning the labor agreement required, then overturned the dismissal for want of evidence to support it. Id. at 3-4. Without questioning the public policy against embezzlement from the Postal Service, we harbored “no doubt that the instant case does not pose a situation requiring the invocation of a public policy exception.” Id. at 8. The arbitrator’s award “was not itself unlawful,” nor did it “otherwise have the effect of mandating any illegal conduct.” Id.
The arbitrator in this case determined that Amtrak could not justify its decision to fire Amtrak Police Officer Sarah Bryant by reference to results of an interrogation in which she was not afforded procedural rights guaranteed by the applicable labor agreement. The Police Officers’ Bill of Rights, codified as Rule 50 of the parties’ collective bargaining agreement, prevents adverse action against a covered employee based on her own statements if Amtrak obtained the statements through interrogation conducted without certain procedural safeguards. As part of its disciplinary process, Amtrak’s Internal Affairs Unit interviewed Officer Bryant in compliance with Rule 50. The OIG, meanwhile, conducted its own investigation unconstrained by Rule 50. Amtrak’s Internal Affairs investigation failed to yield evidence supporting Bryant’s firing. The way the Inspector General had questioned Bryant then became an issue only because Amtrak wanted • the OIG’s report to do double duty — supporting personnel action against Bryant as well as, per the Inspector General Act of 1978, 5 U.S.C. App. 3 § 2, reporting to the agency head the results of audits and investigations.
The reasoning of the arbitrator’s opinion did indeed fail to anticipate our decision in DHS, and I can readily see how the arbitrator’s statement that the CBA’s “Rule 50 does not exempt Amtrak OIG” is in tension with DIIS’s rule that “public sector unions and agencies can neither add to nor subtract from the OIG’s investigatory authority through collective bargaining.” DHS, 751 F.3d at 671; see Maj. Op. at 339 & n. 4. But it exceeds the scope of our review to scrutinize whether the arbitrator’s reasoning conflicts with the claimed “public policy.” Our task “is limited to determining whether the award itself, as contrasted with the reasoning that underlies it, creates an explicit conflict with the law.” Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 56:111 (Labor Arbitration Agreements— Confirmation and Enforcement of Awards — Effect of Violation of Law or Public Policy) (4th ed. 2016); see also Larry E. Edmonson, Domke on Commercial Arbitration § 38:10 (3d ed. 2016) (“A court ... will simply look whether the award itself violates public policy.”). If the arbitrator’s award does not itself direct a violation of law or an identifiable, well-defined and dominant public policy, we have no authority to disturb it.
The award here is fully compatible with the Inspector General’s independence. The award did not require the OIG to bargain collectively, nor did it “conclude!] that Rule 50 bound the Inspector General” in contravention of DHS. Maj. Op. at 338. What the arbitrator ruled was:
*344 The Corporation did not have just cause to discharge Grievant Sarah Bryant because the procedural safeguards guaranteed to employees by Rule 50 of the parties’ Agreement were not afforded her during the September 25, 2012, Amtrak OIG interrogation. Therefore, Grievant shall promptly be reinstated to her prior position and made whole, with payment of all back pay and benefits, and restoration of her seniority.
J.A. 220. The award merely invalidates Amtrak’s discharge of Bryant based on an interrogation in which she was not afforded her procedural rights. As an arbitration award, it is case-specific, not precedential. See U.S. Postal Serv., 789 F.2d at 21. The question for us is limited to whether the arbitral award — the award itself or the relief ordered, not the reasoning on which it rests — “compels conduct contrary to a well-defined public policy.” U.S. Postal Serv., 789 F.2d at 20. Nothing in this award compels any public policy violation. Cf. W.R. Grace and Co., 461 U.S. at 767, 103 S.Ct. 2177 (noting that nothing in the collective bargaining agreement, as interpreted by the arbitrator, required the company to violate the conciliation order).
The majority finds fault with my reading of the arbitrator’s award as narrowly focused on Bryant’s rights rather than more generally controlling the OIG’s activities. See Maj. Op. at 338 n.4. The majority asserts that the arbitrator violated public policy because, in the arbitrator’s opinion (and only there, not in her award), she reasoned “that the Inspector General ‘must comply with’ Rule 50.” Maj. Op. at 338 n.4. But, again, the arbitrator’s reasoning is not the yardstick against which compliance with public policy is measured. What matters is the award itself. See Am. Postal Workers Union, 789 F.2d at 8; Williston, A Treatise on the Law of Contracts § 56:111. Here, the award announces that Amtrak lacked cause to fire Bryant because the procedural safeguards “guaranteed to employees by Rule 50 of the parties’ Agreement were not afforded her.” J.A. 220. Neither the arbitrator’s award nor my preferred disposition of this appeal would require the Inspector General to conduct its independent watchdog role as auditor and investigator, see 5 U.S.C. App. 3 § 2, in conformity with Rule 50. Here, as in American Postal Workers, the arbitrator’s decision was “nothing more than a ruling on the admissibility of evidence, which drew its essence from the parties’ contract and violated no established law.” 789 F.2d at 3. Here, as there, we have “no choice in such a circumstance but to uphold and enforce the arbitrator’s award.” Id.
If Amtrak is unhappy with the arbitrator’s application of the collective bargaining agreement, presumably it may “negotiate a modification” to authorize Inspector General reports to be used in employee disciplinary actions even after the OIG interrogates employees without respecting their Rule 50 rights. Am. Postal Workers Union, 789 F.2d at 7; see also Nw. Airlines, 808 F.2d at 84. And, without any change to the collective bargaining agreement, Amtrak’s Office of Inspector General may in some or all of its investigations elect to question employees in a manner that qualifies its investigative fruits for use in Amtrak’s disciplinary process. Nothing bars an Inspector General from voluntarily giving Miranda warnings, recording interviews, or informing employees of their right to have a union representative present.
The court’s decision to vacate the arbi-tral award in this case contradicts decades of precedent delineating a narrow public policy exception and threatens as a practical matter to destabilize many, if not most, arbitral awards. Indeed, its impact *345 may well reach beyond labor arbitration to commercial arbitration under the Federal Arbitration Act, as “[t]here is no doubt that the scope of review of arbitration in cases involving mandatory arbitration of statutory claims is at least as great as the judicial review available in' the context of collective bargaining.” Cole v. Burns Int’l Sec. Servs., 105 F.3d 1465, 1486 (D.C. Cir. 1997) (emphasis omitted). Today’s decision invites litigation in every case in which a disappointed party to an arbitration can base its objection on some claim of error that places the award at odds with “law or public policy.” Once arbitration becomes the start rather than the end of the dispute resolution process, it no longer serves the role Congress envisioned. Because I do not see how, consistent with binding precedent, the court can relieve Amtrak of its obligation to comply with its collective bargaining agreement and the arbitral awards rendered thereunder, I respectfully dissent.